In the Matter of JEROME J. WEINER, Petitioner, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, December 20, 1956.

*Solomon A. Klein* for petitioner.

*Jacob K. Javits, Attorney-General (Robert W. Bush* and *James O. Moore, Jr.,* of counsel), for respondent.

BERGAN, J.   Petitioner is a physician and surgeon licensed in 1917. His license has been suspended for a period of one year by the State Commissioner of Education pursuant to an order of the Board of Regents.   The order of suspension is based on a specific charge of misconduct.

It becomes important in this article 78 proceeding reviewing the order of suspension to see just what the specific charge was. It was that petitioner had been " convicted of crimes within the purview and meaning of Section 6514, subdivision 2 (b) of the Education Law ".

The crimes specified were those pleaded in the first and second counts of an indictment in the United States District Court charging respondent with " willfully and knowingly attempting to defeat and evade a large part of the income tax due and owing by him to the United States of America for the calendar years 1945 and 1946 ".   The conviction as thus specified was in 1954; the charge was filed in February, 1955, and the order of suspension was made by the commissioner on December 15 of that year.

A subcommittee of the Committee on Grievances of the Department of Education was designated to hear these charges. The petitioner filed a formal answer admitting the facts specified in the charge against him, but affirmatively alleging that the " said charges " in consideration of the " background thereof and all the facts and circumstances pertaining thereto " did not warrant any action by the department.

In support of the answer petitioner filed a rather long affidavit in which he addressed himself to mitigating the gravity of the income tax conviction.   He described the protracted course of the income tax controversy involving the years 1945 and 1946; of negotiation with the Government which seemed at the point of succeeding but failed after long discussions; of the indictment, in connection with other matters, of counsel petitioner had retained; and of the further re-examination in Washington of petitioner's case " along with other cases pending in the hands of this attorney ".

Petitioner retained other counsel in Washington who also became involved in a Congressional investigation and as a result of this, petitioner alleges, neglected petitioner's case until " the statute of limitations was about to run ".   Whereupon the case " In the middle of the settlement negotiations " was " transferred to the District Attorney's office for indictment ".   There are numerous other details relating to the tax proceedings shown to indicate to the committee extenuating circumstances sur-

rounding the conviction. Among other things, petitioner described his professional work and associations over a period of many years.

In the criminal action in the United States District Court, counsel for petitioner had argued for leniency after conviction upon the basis of the claim that petitioner had not had the benefit of all the income from fees attributed to him, and that some of the fees had been paid to other physicians who referred patients to petitioner.

"As we reconstructed this picture", said counsel to the court, "at least 40 per cent of the total or gross income that Dr. Weiner received from patients of these doctors which were referred to him, went out to these referring doctors".

The United States Attorney said that "the Government undertook an investigation with respect to this splitting of fees, and some 25 doctors who had referred patients to the defendant were interviewed * * * only one would admit * * * and this particular doctor admitted to have $50 kick back. All the other doctors denied they had received anything * * * The defendant was asked on numerous occasions to come forward with some means of substantiating his claim, and he neglected to do so." He added: "we have * * * no substantial evidence of fee splitting here".

As one of the numerous mitigating circumstances set forth in petitioner's affidavit submitted to the subcommittee of the Committee on Grievances relating to the charge of conviction for income tax law violation, a paragraph was addressed to the fee-splitting which had been developed in the criminal action. This paragraph reads as follows: " Please do not consider that, by this history of the proceedings, I am attempting to evade the perhaps more basic issue which confronts this committee. I shared fees with other doctors. I frankly confess that I regarded the canon against fee sharing as an economic rather than an ethical sanction. I beg you, in this connection, to consider the general climate of opinion in the profession in the early 1940's as against the better understanding of the evil as it exists today. I have little further answer to make in that regard, except to say that in the majority of my cases, the forwarding doctor actually rendered needed services to the patients."

If fee-splitting had any place within the scope of inquiry conducted by the committee, based only on the conviction for tax violation, its place was in mitigation of the conviction. Because if petitioner had, in fact, not received for himself all

the income attributed by the Government to him but had disbursed it to other doctors as an expense of doing business, the income tax violation would intrinsically be less grave an offense. Fee-splitting could have mitigated; it could not have made more serious, the tax law conviction which was the charge against petitioner.

It is apparent from the report of the subcommittee that its principal concern was with fee-splitting and that it regarded the income tax conviction as a matter of far less importance. It found that the charges against petitioner had been sustained and recommended that his license be revoked. In its report, the subcommittee's discussion of the tax claim by the Government was largely concerned with its effect on fee-splitting.

It noted that since, apart from the indictment, the Government " claimed " additional taxes and penalties in excess of $60,000 and since petitioner " admittedly split fees in 50% of his cases " that it is " quite apparent " that he " pursued this nefarious business on a substantial as well as frequent basis ". The " nefarious business " to which the subcommittee referred was not income tax evasion but fee-splitting.

The subcommittee then noted: " We have little interest in the exact amount of the respondent's tax liability to the Government or the proper basis upon which it should be calculated. We are deeply concerned with the respondent's admitted highly unethical and unlawful practices ".

In due course the full Committee on Grievances confirmed the report of its subcommittee and recommended to the Regents that petitioner's license be revoked and the Regents in view of its own practice thereupon referred the report to its Committee on Discipline which afforded the petitioner a hearing.

There counsel for petitioner argued that the Committee on Grievances " chose to all but disregard the income tax conviction " and rested decision on fee-splitting. The Regents committee addressed itself to that argument. Its report to the Regents noted that petitioner was at all stages of the proceeding " fully aware " of the " issues " that the Committee on Grievances " deemed important ".

The Regents committee added that if petitioner had raised a proper objection to the " sufficiency of the charges " that they " could easily have been amended. We consider the case, therefore, on the basis of there being in substance two charges against Respondent, one of having been convicted of a crime and the other of fee-splitting."

If, continued the Regents committee, this had been a case "simply of conviction of the income tax crime" a proper "measure of discipline" consistent with "like cases recently before the Board of Regents, would have been a license suspension * * * of three months". But "additional discipline on the basis of Respondent's admitted fee-splitting" was felt warranted.

The committee recommended a suspension of license of one year and three months. It segregated the discipline for the tax conviction and the fee-splitting and specified the three months were for income tax and the year for fee-splitting.

On review of the recommendations of this committee the Regents suspended the license for one year rather than for one year and three months and this became the measure of discipline here reviewed. Since this modification of a segregated two-part recommendation was made to adopt one of the two measures of discipline reported to the Regents it is reasonable to suppose that the recommendation of the year's suspension for fee-splitting was accepted and the recommendation of three months for the income tax law violation rejected.

If this be so, facts only incidental to the charge made against petitioner have effectually absorbed the main charge itself, which has disappeared as far as discipline goes; while the incident to the measure of discipline has become the main basis of the punishment.

We do not attempt on this record to assay as more or less grave in its effect on the practice of medicine a conviction for tax evasion or fee-splitting; and, of course, we do not hold on this record that a suspension of license for one year on the tax conviction alone would be excessive had that been the basis for the decision of the Regents.

But it is perfectly clear from the record that this was not the basis for the discipline that has been imposed and that the discipline rested almost, if not quite entirely, on fee-splitting. The Regents committee noted that this was the first fee-splitting charge against a physician under the statute (Education Law, § 6514, subd. 2, par. [f], [former Education Law, § 1264, subd. 2, par. (f), added by L. 1944, ch. 466, eff. April 1 of that year, and renum. by L. 1947, ch. 820]). If petitioner is to be disciplined for fee-splitting, due process of law requires that he be charged with it in plain words and have a clear opportunity to meet it head on.

It is true enough that petitioner had a consciousness of professional irregularity in respect of fee-splitting when he came

before the subcommittee on grievances; but he was there explaining, as part of a large and detailed narrative, facts which could be regarded as extenuating the charge of tax conviction. And it is true, also, as the Regents committee noted, that had the petitioner raised before the subcommittee the question of the sufficiency of the charges that "the charges could easily have been amended".

That they could easily have been amended to include new charges is not necessarily to say that the petitioner would have admitted them as they might be specified on a new specific accusation, with heavier discipline possible than on the original charges; or even that they could be proved as thus specified.

The Regents committee was of opinion that the awareness of petitioner of what was in the mind of the Committee on Grievances was sufficient notice to him to obviate the need of making additional charges against him. On this subject the Regents committee noted: "Respondent was at all stages of the proceeding fully aware of the issues that the Medical Committee on Grievances deemed important".

The committee did evince a considerable interest in the fee-splitting aspects of the petitioner's practice. But it also devoted a large amount of time to the income tax conviction and there was nothing in any of the statements of the subcommittee or the assistant attorney-general who presented the case to it to suggest the committee was suggesting to the petitioner it deemed it had before it two charges, not one.

One question of the assistant attorney-general to the petitioner was this: "Q. Doctor, I am not interested in having you give me the name of anybody, but I would like to ask this: Were the doctors who referred cases to you located in Manhattan? A. Yes, sir."

If this had been a charge of fee-splitting it is scarcely conceivable that the Committee on Discipline would not have been interested in knowing the names of the physicians with whom the fees were split; since we suppose the referring physician is culpable as well as the surgeon in such a situation. We think on the whole record that petitioner or his counsel could not have known from the course of proceedings while before the commitee that the issue which the committee "deemed important" was not the charge it was trying, but another charge.

When the report was made, stating that the committee regarded the tax conviction a matter of lesser interest petitioner knew, of course, what the committee deemed important; but this was far too late; and it is apparent from the Regents

committee's report that the question was promptly raised following the report of the Committee on Grievances.

As an incident of the need to pursue regularity of disciplinary proceedings and assure due notice of the specific offense charged, the practical effect of the course followed in the proceedings should be considered. Petitioner, as it has been seen, did admit " fee-splitting " with other physicians; but he did so in general terms and with attempts at explanation which would be scarcely germane to the income tax charge but which would be vital in a fee-splitting charge.

Petitioner testified that as to some of the cases in which he divided fees, the referring physician actually rendered medical services in conjunction with the fee earned; or attended or assisted the petitioner. The exact numbers or the relative importance of these arrangements are left in very considerable doubt in this record.

If the fee was divided for divided services and only the billing to the patient was irregular, that is one thing; if the fee was divided solely for referral, that is another thing. That issue has been explored only in the loosest and most general fashion; not as a vital matter in the proceeding, but as an incident to the tax case.

If the charge is laid plainly at petitioner's door, he will be able to prepare for it, if he joins issue wholly or in part, as the main controversy and not as a mere facet to another charge. We think that the requirements of fair administrative process are that petitioner have a new hearing.

The determination of the Regents should be annulled, without costs and the matter remitted for its further consideration.

FOSTER, P. J., COON, HALPERN and GIBSON, JJ., concur.

Determination of the Board of Regents annulled, without costs, and the matter remitted for its further consideration.