Sherry L. WEBER, R.N., a/k/a Sherry Stanton, Petitioner–Appellant,

v.

COLORADO STATE BOARD OF NURSING, Respondent–Appellee.

No. 90CA2091.

Colorado Court of Appeals, Div. V.

March 26, 1992.

As Modified On Denial of Rehearing April 23, 1992.

Certiorari pending July 2, 1992 (92SC405).

Silver, Robinson & Barrick, George C. Price, Donald K. Gallagher, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Andrew D. Stone, Asst. Atty. Gen., Denver, for respondent-appellee.

Opinion by Judge ROTHENBERG.

Petitioner, Sherry L. Weber, a/k/a Sherry Stanton appeals from the final order of the Colorado State Board of Nursing (nursing board) suspending her license to practice professional nursing. We affirm in part, reverse in part, and remand with directions.

Petitioner is a registered nurse licensed to practice professional nursing in Colorado. On February 26, 1990, the nursing board filed a notice of charges alleging that she had violated numerous provisions of the Nurse Practice Act, § 12–38–101, et seq., C.R.S. (1991 Repl.Vol. 5B).

More specifically, the nursing board's notice of charges alleged: (1) that, despite repeated requests, petitioner had failed to furnish medical records in a timely fashion to four of her patients; (2) that she had pled guilty to two felony check charges; and (3) that she had procured her nursing license by fraud, deceit, misrepresentation, misleading omission, or material misstatements of fact by denying that she had pled

guilty to the felonies when she applied for renewal of her license.

On June 27, 1990, the Administrative Law Judge (ALJ) granted summary judgment in favor of the nursing board on its allegations regarding the felony pleas and the procurement of a nursing license by deceit and misinformation. On July 25, 1990, a formal disciplinary hearing was held on the remaining counts.

On September 25, 1990, the ALJ issued an initial decision setting forth detailed findings of fact, conclusions of law, and a decision recommending probation for petitioner. Neither party filed exceptions to the findings of fact. However, both sides filed exceptions to the ALJ's conclusions of law. After reviewing the ALJ's initial decision and the exceptions filed, the nursing board issued its final order on December 4, 1990.

In that order, the nursing board adopted all of the ALJ's findings of fact and conclusions of law, but rejected the recommendation of probation for one and one-half years, subject to certain terms and conditions. Instead, the nursing board imposed a one-year suspension of petitioner's nursing license, followed by two years of probation. In addition, the nursing board ordered that petitioner's license not be reinstated until she returned all medical records to certain of her ex-patients.

Petitioner thereafter filed this action for judicial review pursuant to § 12–38–120(6), C.R.S. (1991 Repl.Vol. 5B) and § 24–4–106, C.R.S. (1988 Repl.Vol. 10A).

## I.

██ Petitioner first contends that the nursing board erred by disciplining her for conduct which did not involve the practice of nursing. In essence, she contends that the statutory definition applicable here does not include the handling of medical records. Thus, according to petitioner, even if we assume that she failed to handle her patient's medical records properly, that failure did not violate generally accepted standards of nursing practice. We disagree.

The Nurse Practice Act gives the State Board of Nursing the power to discipline licensed professional nurses within this state. Section 12–38–103(10), C.R.S. (1991 Repl.Vol. 5B) defines the practice of professional nursing as:

[T]he performance of both independent nursing functions and delegated medical, podiatric, and dental functions.... [It] shall include the performance of such services as:

(a) Evaluating health status through the collection and assessment of health data ...

(d) Executing delegated medical functions as prescribed or authorized by a licensed or legally authorized physician or dentist ...

(f) Reviewing and monitoring therapy and treatment plans.

At the hearing, the nursing board's expert testified that the failure to maintain patient medical records properly fell below generally accepted standards of nursing practice. And, based upon this undisputed testimony, the ALJ concluded that the handling of records constitutes "an integral part of the profession of nursing" and "an essential element of appropriate patient care."

We find no error in the ALJ's conclusion, nor are we persuaded that the statutory duty to evaluate health status "through the collection and assessment of health data" can be logically separated from the handling of patient records. Similarly, "reviewing and monitoring therapy and treatment plans" necessarily requires appropriate handling of the patient records.

██ Petitioner also contends that she was afforded inadequate notice of the conduct prohibited by § 12–38–117(1)(f), C.R.S. (1991 Cum.Supp.) and that the nursing board was required to promulgate rules and regulations in order to make the statute more specific. That section grants the nursing board the power to discipline a nurse who:

Has negligently or willfully practiced nursing in a manner which fails to meet generally accepted standards for such nursing practice.

However, petitioner's argument was implicitly rejected by our supreme court in *Kibler v. State*, 718 P.2d 531 (Colo.1986) (Nurse Practice Act is sufficiently specific to provide fair warning of the proscribed conduct and adequate guidelines for imposition of discipline). We consider *Kibler* dispositive.

## II.

Petitioner next contends that the ALJ erred in granting the nursing board's motion for summary judgment regarding violations arising from the criminal proceedings against her for writing insufficient funds checks. We agree in part.

Section 12–38–117(1), C.R.S. (1991 Repl. Vol. 5B) allows discipline for any nurse who:

(a) Has procured or attempted to procure a license by fraud, deceit, misrepresentation, misleading omission, or material misstatement of fact; [or]

(b) *Has been convicted of a felony or has had accepted by a court a plea of guilty* or nolo contendere *to a felony.* A certified copy of the judgment of a court of competent jurisdiction of such conviction or plea shall be prima facie evidence of such conviction. In considering the possible revocation, suspension, or nonrenewal of a license or temporary license, the board shall be governed by the provisions of section 24–5–101, C.R.S. (emphasis added)

Here, it is undisputed that: (1) petitioner pled guilty to two felonies and received a deferred judgment; (2) she successfully completed her period of deferred judgment at the end of which she was allowed to withdraw her pleas of guilty; (3) at the time petitioner filled out her nursing application, she had pled guilty but her felony charges had not yet been dismissed; and (4) the felony charges had already been dismissed when the nursing board filed notice of these charges against her.

### A.

■ We first examine whether the ALJ erred in concluding that petitioner violated § 12–38–117(1)*(a)* and in granting the nursing board's motion for summary judgment based on that section. We conclude that the ALJ did not err.

Here, it is undisputed that petitioner's guilty pleas entered and had not been withdrawn *at the time she filled out her application.* Thus, the petitioner knew about her guilty pleas, had a duty to disclose that information in her application, and her failure to do so violated § 12–38–117(1)(a) since the provision in question prohibits fraud or misrepresentation in procuring a license. Accordingly, we find no error in the entry of summary judgment as to this violation. *See People v. Vollentine*, 643 P.2d 800 (Colo.App.1982) ("[U]ntil the plea is withdrawn, following the successful completion of [a deferred judgment]" there is no distinction for impeachment purposes between guilty plea where sentence has not yet been imposed and guilty plea under a deferred sentence).

### B.

■ The next issue is whether petitioner violated § 12–38–117(1)*(b)*. She contends that she cannot be disciplined under that statutory subsection because a deferred judgment stipulation is not a judgment. Thus, petitioner contends that there exists no "judgment of a court of competent jurisdiction of such conviction or plea." The Attorney General argues that since § 12–38–117(1)(b) can be violated by either a conviction of a felony *or* a plea of guilty to a felony, it includes deferred judgments. We agree with petitioner.

There is no authority addressing this precise issue. However, § 16–7–403(2), C.R.S. (1991 Cum.Supp.) offers considerable guidance. That statute makes it clear that when a defendant pleads guilty to a felony, and receives and successfully completes a deferred judgment, no judgment of conviction enters during the two-year deferral period. It further provides that:

"Upon full compliance with [the] conditions [of probation] by the defendant, the plea of guilty previously entered shall be withdrawn and the action against the defendant dismissed with prejudice."

Additionally, in *Hafelfinger v. District Court*, 674 P.2d 375 (Colo.1984), our supreme court stated in the context of the bail bond statute that, following withdrawal of a plea to a deferred judgment, the earlier acceptance of the guilty plea is vitiated. There, in footnote 3, it said:

The question of whether a person has a record of conviction ... after successfully completing the period of the deferred sentence is not before us. We note, however, that under our statutory scheme, the defendant in such a case would no longer be convicted.

When the plea is withdrawn the earlier acceptance of the guilty plea by the court is vitiated ... [and] evidence of the guilty plea is no longer admissible after successful completion of the period of the deferred sentence.

We also note that approximately one year after *Hafelfinger* was announced, the General Assembly amended § 12–38–117(1)(b). Whereas the statute originally allowed for discipline only if a nurse has "been convicted of a felony or has had accepted by a court a plea of nolo contendere to a felony," the July 1, 1985, amendment added language to also allow discipline if a nurse has "had accepted by a court *a plea of guilty* ... to a felony."

■ Where statutory language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction. However, if as here, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may look to pertinent legislative history to determine the purpose of the legislation. *See 24, Inc., v. Board of Equalization*, 800 P.2d 1366 (Colo.App. 1990).

According to the legislative history, the General Assembly appears to have interpreted the original statutory language to limit the discipline of nurses to situations in which nurses were convicted of a felony as a result of a court or jury trial, or convicted of a felony as a result of a nolo contendere plea. The common denominator in both situations was the conviction of a felony.

However, as one legislator stated: "If [a nurse] *plead[s] guilty* to a felony, we could not do anything with her." *See* Hearings before Senate and House Education, Welfare & Institutions Committee, 55th General Assembly, 1st Regular Session (January 3, 1985) (emphasis added).

It thus appears that the General Assembly's purpose in amending § 12–38–117(1)(b) was to also allow discipline in cases in which *a plea of guilty resulted in a conviction.*

As additional support for our conclusion, we also note that the General Assembly has seen fit to specifically refer to deferred judgments in the statute governing dismissal of teachers. Section 22–63–301, C.R.S. (1991 Cum.Supp.) provides that "a teacher may be dismissed for ... the conviction of a felony or the acceptance of a guilty plea, a plea of nolo contendere, *or a deferred sentence for a felony....*" (emphasis added)

No such language is contained in the statute governing the discipline of nurses and we do not view the General Assembly's failure to include deferred judgments within that statute as an oversight. We therefore reject the Attorney General's contention that proof of a guilty plea and receipt of a deferred judgment alone is sufficient.

Here, petitioner's plea of guilty to the deferred judgment never resulted in her conviction of a felony. After she successfully completed her deferred judgment period, her pleas of guilty were withdrawn. Thus, although the ALJ may have been correct in a literal sense in concluding that "withdrawal of the pleas does not mean that they never existed or that they were never accepted," the ALJ's finding nevertheless did not address the dispositive issue; that is, whether petitioner's pleas to the felonies *legally existed* when she was charged by the nursing board. *See Hafelfinger v. District Court, supra.*

In summary, we hold that at the time the nursing board brought its charges, petitioner did not have an existing conviction for a felony, nor did her pleas of guilty legally exist since they had been dismissed with prejudice. *See* § 16–7–403, C.R.S. (1986

Repl.Vol. 8A). Thus, the ALJ and the nursing board erred as a matter of law in concluding that petitioner violated § 12–38–117(1)(b) and in granting summary judgment for the nursing board based on her pleas of guilty. *See* § 24–4–106(7); *Denver v. Industrial Commission,* 707 P.2d 1008 (Colo.App.1985) (court of appeals is not bound by conclusions of law made by the agency).

In so ruling, we are also cognizant of our supreme court's recent decision in *People v. Wilson,* 814 P.2d 791 (Colo.1991). There, an attorney pled guilty to possession of cocaine, a felony, and he received a deferred judgment. Later, his deferred judgment was considered in the context of a discipline proceeding against the attorney. Our supreme court approved a three-year suspension of the attorney and stated:

> While the respondent may ultimately benefit from the deferred judgment entered in his criminal proceeding by enjoying a dismissal of the charge, the underlying conduct that gave rise to that charge is of serious consequence, in and of itself meriting some period of suspension.

■ In summary, we read *Hafelfinger* and *Wilson* as authority for the proposition that, following the successful completion of a deferred judgment, there no longer exists a plea of guilty to a felony, and there never existed a judgment of conviction. Thus, a professional licensing board may not discipline a licensee under § 12–38–117(1)(b) who has successfully completed a deferred judgment for having been convicted of a felony or having pled guilty to a felony.

Nevertheless, a deferred judgment is not an acquittal. And, in professional disciplinary proceedings, a licensing board is allowed to consider the underlying conduct giving rise to the criminal charges in the context of other disciplinary rules. *People v. Wilson, supra. Cf. Land v. Hill,* 644 P.2d 43 (Colo.App.1981) (defendant who successfully completes deferred judgment may not file malicious prosecution action). *See generally* Annot., 76 A.L.R.3d 1028 (1977).

## III.

■ Petitioner next contends that the nursing board's failure to give her an opportunity to respond to the exceptions filed by the Attorney General violated her right to due process. However, since, in view of our disposition, the matter must be remanded for a new hearing on sanctions, this matter is now moot. On that remand, petitioner will have another opportunity to file timely exceptions. *See State Board of Nursing v. Crickenberger,* 757 P.2d 1167 (Colo.App.1988).

Insofar as petitioner also contends that the Attorney General's exceptions were improper and constituted an *ex parte* legal opinion, this argument has been previously rejected. *See People v. Brown,* 770 P.2d 1373 (Colo.App.1989); *Horwitz v. State Board of Medical Examiners,* 716 P.2d 131 (Colo.App.1985).

## IV.

Petitioner's final contention is that the sanctions imposed upon her by the nursing board were overwhelmingly disproportionate to the offenses and, therefore, constituted an abuse of discretion by the board. Again, in view of our disposition above, we also need not decide that issue.

That portion of the order finding that petitioner violated the Nurse Practice Act by failing to furnish medical records to four of her patients is affirmed. Also affirmed is that portion of the order finding that petitioner violated § 12–38–117(1)(a). The remaining portion of the order which found that petitioner violated § 12–38–117(1)(b) is reversed, and the cause is remanded for a new hearing on sanctions.

PLANK and DAVIDSON, JJ., concur.