**Robert Mark ROSEN, Appellant,**

v.

**BOARD OF MEDICAL EXAMINERS OF the STATE OF IOWA, Appellee.**

No. 94–691.

Supreme Court of Iowa.

Oct. 25, 1995.

As Corrected on Denial of Rehearing Nov. 17, 1995.

346

Craig F. Graziano and James W. O'Brien of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Maureen McGuire, Assistant Attorney General, for appellee.

NEUMAN, Justice.

This controversy centers on the meaning of "fraud in procuring a license," the reason given by the Iowa Board of Medical Examiners for denying Robert Rosen's application to practice medicine in Iowa. The district court upheld the board's decision on judicial review. Rosen now appeals, claiming the board erroneously equated inaccuracy with fraud. Finding no error, we affirm.

The facts are undisputed. Rosen is a graduate of Rutgers University and the New York College of Osteopathic Medicine. In 1987, he successfully completed a one-year internship at Kennedy Memorial Hospitals in New Jersey, followed by a one-year family practice residency in Brooklyn, New York. He was certified by the American Osteopathic Board of General Practice in 1989.

In August 1988, Rosen began what he thought would be a three-year preceptorship in dermatology under the supervision of D.P. Knapp, M.D., in Moline, Illinois. The first two years of the preceptorship were approved by the American Osteopathic Association (AOA). However, during the third year, Knapp sold the practice and moved to Iowa. Rosen continued to work in Moline for another year but, at the suggestion of the AOA, completed the third year of his preceptorship with a doctor in California.

Meanwhile, Knapp began pressuring Rosen to join him in practice in Iowa. Rosen procrastinated in completing the required application form. Knapp eventually appeared on Rosen's doorstep with the form in hand, urging him to sign it in blank and assuring him that he would complete the form based on Rosen's curriculum vitae. Rosen agreed to Knapp's plan and the application was submitted to the board for approval.

The form submitted by Rosen, via Knapp, erroneously stated that Rosen had completed a three-year dermatology preceptorship under Knapp's supervision. It made no mention of the fact that the AOA had approved only two years of Rosen's tenure in Moline, or that Rosen had completed the preceptorship elsewhere. Several questions on the application were also left unanswered. Left blank were inquiries about pending investigations by other state licensing boards and whether Rosen had ever been sued for malpractice. (The record reveals that Rosen was, in fact, named as a codefendant in a suit along with Knapp.) The application also sought information not customarily found on a resume, such as questions about substance abuse and criminal convictions. Knapp apparently answered these queries based on his acquaintance with Rosen.

Following its investigation, the board advised Rosen by letter that it was denying licensure based on Rosen's failure to make "full, complete and accurate disclosures" regarding section 11 of the form, residencies. Rosen filed a notice of appeal and moved for more specific statement. The board responded with further detail about the discrepancies that had surfaced concerning Rosen's residencies. Rosen also sought an informal hearing with board staff and legal counsel. The informal hearing yielded a concession by Rosen's counsel that the inaccura-

cy stemmed from the form having been signed in blank, Rosen's certification to the contrary notwithstanding.[1] This explanation failed to resolve the matter and the case proceeded to contested hearing.

Rosen testified in his own behalf at the hearing. He explained that the inaccuracies and incomplete information in his application resulted from the fact that he foolishly entrusted Knapp with the responsibility of filling it out. He conceded that the application contained an affidavit, signed by him, certifying under penalty of perjury that the information contained therein was true and correct. He professed no knowledge about who might have notarized his signature. He expressed regret at his lack of good judgment but maintained that he had no intent to deceive the board by the information provided or omitted.

At the close of evidence, the State moved to amend the board's more specific statement "to include the issue of signing a blank application form as being one of the factual bases to constitute fraud in obtaining a license." The motion was granted over Rosen's objection that it was untimely.

The board found Rosen violated Iowa Code section 258A.10 (1991),[2] fraud in procuring a license, by

> intentionally pervert[ing] the truth in making his application for medical licensure in Iowa, by signing the attestation on the application form when the form was blank, and [failing] to subsequently review the answers on the form for their truthfulness.

The district court affirmed the board's decision on judicial review and this appeal by Rosen followed.

■ I. Our decision is largely controlled by the limited scope of our review. What we said in a recent licensing case bears repeating here:

> A court's review of agency action is severely circumscribed. The administrative process presupposes that judgment calls are

to be left to the agency. Nearly all disputes are won or lost there. Thus the court may reverse, modify, or grant other appropriate relief only if agency action is affected by error of law, is unsupported by substantial evidence in the record, or is characterized by abuse of discretion.

*Burns v. Board of Nursing,* 495 N.W.2d 698, 699 (Iowa 1993) (citations omitted).

■ II. The first issue is whether the board properly rested its decision, in part, on facts not mentioned in the original denial of licensure or in its response to Rosen's motion for more specific statement. Both these documents referenced only Rosen's failure to make full, complete and accurate disclosures concerning residencies. Once Rosen tendered his defense of signing the form in blank, however, the State successfully moved to add another ground upon which its fraud claim could rest. Rosen claims on appeal that permitting the amendment violated his right to procedural due process. Our review of such a constitutional claim is de novo. *Freeland v. Employment Appeal Bd.,* 492 N.W.2d 193, 195 (Iowa 1992).

■ The crux of Rosen's claim is that the amendment changed, without notice, the issue being tried. Like the district court, we disagree with his contention. At all times the issue was whether Rosen's application for licensure could be denied on the basis of fraud in its procurement. The amendment merely enlarged the factual basis supporting the charge. It neither altered the legal issues presented nor subjected Rosen to new and distinct charges. *Cf. Committee on Professional Ethics & Conduct v. Wenger,* 454 N.W.2d 367, 369 (Iowa 1990) (lawyer entitled to separate notice and hearing on charge of false testimony stemming from statements made during trial on charges of professional neglect and failure to respond to grievance committee); *Weiner v. Board of Regents,* 3 A.D.2d 113, 117–19, 158 N.Y.S.2d 730, 734–35 (1956) (doctor, faced with discipline based on criminal income tax evasion charge, could not

---

1. The affidavit signed by Rosen read: "I, Robert Rosen, being duly sworn state, under penalty of perjury, that the foregoing information contained in this application and any attachment is true and correct...."

2. This statute has since been transferred to chapter 272C. *See* Iowa Code § 272C.10 (1993).

be disciplined without notice on amended charge of fee splitting that stemmed from his own testimony).

As noted by the district court, Rosen is in no position to complain of surprise or prejudice. *All* of the evidence pertinent to the false affidavit was furnished by Rosen himself. Rosen nevertheless claims that, with proper notice, he "could have altered his preparations to meet the *new charge* head on." (Emphasis added.) Given his defensive posture in this case, we find the argument untenable. No new charge was filed. This is not a case in which a search for the truth became a trap for the unwary. *See Wenger*, 454 N.W.2d at 369. No denial of due process has been shown.

III. Iowa Code section 147.4 grants the Iowa Board of Medical Examiners authority to deny licensure on the "grounds for which a license may be revoked or suspended." Iowa Code section 147.55(1) provides that a license may be revoked or suspended for "[f]raud in procuring a license." The term "fraud in procuring a license" is defined at 653 Iowa Administrative Code 12.4(1) as conduct including, but not limited to

an intentional perversion of the truth in making application for a license to practice medicine and surgery, ... and includes false representations of a material fact, whether by word or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed when making application for a license in this state, or attempting to file or filing with the board ... any false or forged diploma, or certificate or affidavit or identification or qualification in making an application for a license in this state.

■ Rosen cites error in the board's application of this standard, claiming the definition departs from the common law definition of fraud. In a common law action for fraud, the following elements must be proven: (1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce the plaintiff to act or refrain from acting, (4) upon which the plaintiff justifiably relies, (5) with damages. *Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 340 (Iowa 1991); *see Garren v. First Realty, Ltd.*, 481 N.W.2d 335, 338 (Iowa 1992); *Hall v. Wright*, 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968). Rosen asserts that the board not only failed to consider these elements in its definition, the record does not support the board's finding of fraud as a matter of law. We shall consider the arguments in turn.

■ A. Although statutory construction is ultimately a judicial function, we are obliged to "give weight to an agency's construction of a statute so long as the agency does not purport to make law or change the meaning of the law." *Iowa S. Util. v. Iowa State Commerce Comm'n*, 372 N.W.2d 274, 277 (Iowa 1985). A presumption of validity attends any agency rule adopted pursuant to delegated authority. *Overton v. State*, 493 N.W.2d 857, 859 (Iowa 1992). Any challenge to that authority, to be successful, must be established by clear and convincing evidence. *Dunlap Care Ctr. v. Iowa Dep't of Social Serv.*, 353 N.W.2d 389, 393 (Iowa 1984). Rosen has not met that standard here.

■ It is generally held that laws enacted to protect the public from fraud need not codify the common law elements. Fraud is a generic term whose precise contours are often left undefined for the very purpose of giving tribunals the liberty to deal with it in whatever form it may present itself. *See* 37 Am.Jur.2d *Fraud* § 1, at 18 (1968) ("the fertility of man's invention in devising new schemes of fraud is so great that courts have always declined to define it"); 37 C.J.S. *Fraud* § 1, at 204 (1943) ("the forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise"). Thus this court has recently held that an action brought under the Consumer Fraud Act need not rest on proof identical to that required to prove fraud at common law. *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621 (Iowa 1989). We reasoned that enforcement of the act, designed to protect the public, would be furthered by eliminating unessential elements. *Id.* We held it was sufficient, under the act, to show "a misrepresentation of any material fact with the intent that others rely on the misrepresentation." *Id.* at 622.

We nevertheless find little, if anything, to distinguish the elements of fraud as defined by the board's administrative rule from the rule as applied at common law. Both focus on an intent to deceive: in the administrative context by conduct amounting to "an intentional perversion of the truth" and in a civil action by "a material misrepresentation made knowingly." Consistent with common law, the administrative rule explicitly requires proof of materiality. *See* 653 Iowa Admin.Code 12.4(1) ("false representations of a material fact"). Because securing licensure is the only reason for submitting an application, rule 12.4(1) parallels by implication the common law proof requirement of "intent to induce action or inaction." As for the element of reliance, the very form signed by Rosen warns that any license granted by the board "will be on the truth of the statements made herein, which if false will subject [applicant] to criminal prosecution and revocation [of the license]."

Iowa Code section 147.55 plainly authorizes the board to revoke or deny any medical license procured by fraud. Section 258A.10 (1991) directs licensing authorities to implement that statute by rule. We do not believe the definition of fraud contained in 653 Iowa Administrative Code 12.4(1) either exceeds the agency's statutory authority or substantially changes the meaning of the law. The definition clearly falls within the board's "reasonable range of informed discretion" to set standards. *Dunlap*, 353 N.W.2d at 393. No error of law has been shown.

B. The tougher question is whether the record supports a finding of fraud under the standard established by the board. Rosen insists that the board, from the outset, erroneously equated inaccuracy with fraud. In support of his position, he argues strenuously that a reasonable person could not rightly characterize his conduct as fraudulent because (1) he had no intent to deceive, (2) the misrepresentations on his application were not material, and (3) the requisite proof of scienter is missing. None of the arguments can bear close scrutiny.

■ 1. *Intent.* Rosen argues that it was Knapp, not he, who deceived the board. Claiming he intended at all times to furnish only accurate information, Rosen asserts that but for Knapp's unexpected errors, this controversy would not have arisen. Attempting to further shed responsibility for the contents of the application, Rosen boldly claims that the attestation clause he signed "contained no representation that [he] had reviewed the answers for their truthfulness."

In essence Rosen claims that he cannot be charged with intentionally deceiving the board because, at the time he attested to the truthfulness of his answers, he in fact had no knowledge of what the answers were. Such sophistry has long been rejected by this court, as evidenced by the following quote taken from a case alleging fraud against a lawyer:

> When one falsely states that to be true which he does not know to be true, for the purpose of inducing another to rely upon it and act upon it, he is just as guilty of actionable fraud in the event he is accepted at his word as if he knew at the time it was not true. One cannot falsely state a fact to be true as of his own knowledge, about which he has no knowledge, for the purpose of inducing another to act, and then, when action follows, escape liability on the mere showing that he did not know the fact to be untrue at the time he made the statement.

*Hall*, 261 Iowa at 769, 156 N.W.2d at 668 (quoting *Dimond v. Peace River Land & Dev. Co.*, 182 Iowa 400, 408, 165 N.W. 1032, 1035 (1918)).

■ It is also well settled that intent to deceive may be proven in one of two ways: by proof that the speaker (1) has actual knowledge of the falsity of the representation or (2) speaks in reckless disregard of whether those representations are true or false. *Garren*, 481 N.W.2d at 338; *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984). Given Rosen's tacit admission that he tendered a false affidavit to the board, we believe the record would support a finding by a reasonable fact finder under either prong of the intent to deceive element.

■ 2. *Materiality.* Rosen has a somewhat stronger case on the question of materiality. Licensure in Iowa requires only an

accredited one-year internship or residency. 653 Iowa Admin.Code § 11.3(1)(d). Rosen easily meets this requirement based on the internship and residency he completed before starting the preceptorship. Thus, he argues, any misrepresentation on the form concerning his preceptorship is immaterial and may not be used to disqualify him.

We believe Rosen's argument begs the larger question of whether an applicant's honesty, integrity, and judgment—as demonstrated in the licensure process or anywhere else—are material to decisions made by a licensing board. We have no reason to question the board's judgment that they are. Moreover, we are unwilling to hold, as a matter of law, that the board must regard Rosen's dishonesty as immaterial just because the facts to which he swore were not, standing alone, material to the question of licensure.

■ This case is not unlike *Weber v. Colorado State Board of Nursing*, 830 P.2d 1128 (Colo.App.1992). There the court upheld a finding of fraud or misrepresentation in procuring a license against a nurse who failed to disclose on her application the entry of guilty pleas to two felonies. *Id.* at 1131. The guilty pleas were ultimately withdrawn based on a deferred judgment and could not be used to disqualify her for licensure. *Id.* at 1133. But because they had not been withdrawn *at the time she filled out her application,* the court held she had failed in her duty of disclosure thereby violating the prohibition against fraud or misrepresentation in procuring a license. *Id.* at 1131.

Here, among the items left blank on Rosen's application, was a question pertaining to allegations of medical malpractice. Rosen admitted under oath that a pending suit should have been disclosed. We reject Rosen's claim that this omission, as well as his false attestation, are not material matters from which a reasonable person could infer a deliberate perversion of the truth.

■ 3. *Scienter.* Rosen admits that he was careless in permitting Knapp to complete and submit his application, but claims the record is without proof that he *knowingly* made any false statement. *See B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976) (element of scienter requires proof of false representation made knowingly). Again he attempts to shift the blame to Knapp for knowingly making the misstatements. He thereby sidesteps his own knowing act of signing the application in blank, contrary to the plain message of the attestation.

■ As with proof of intent to deceive, scienter may be established by proof of actual knowledge of the falsity, or proof of reckless disregard for whether a representation is true or false. *Garren,* 481 N.W.2d at 338. We are unwilling to find, as a matter of law, that this record could not support a finding that Rosen's actions were more than careless and amounted to a knowing indifference for the consequences of his conduct. *See Board of Dental Examiners v. Hufford,* 461 N.W.2d 194, 201 (Iowa 1990).

In summary, we believe that no matter how Rosen tries to minimize the effect of his dishonesty, or cast the blame elsewhere, this record contains substantial evidence that he intentionally submitted an application for licensure that knowingly misrepresented material facts bearing on his qualification to practice medicine in this state. How the board weighed the evidence necessarily entails judgment calls that are uniquely within the realm of the board as fact finder. *Burns,* 495 N.W.2d at 699. On issues so fundamental to the medical licensing process as the honesty and integrity of the applicant, we are unwilling to substitute our judgment for that announced by the board. The decision of the board, upheld on judicial review, must be affirmed.

IV. Upon receiving the board's decision, Rosen applied for rehearing. His application alleged, on information and belief, that there are numerous cases in which the board has not treated every answer on an application for licensure as material. Rosen then alleged disparate treatment, in violation of the equal protection clauses of the state and

federal Constitutions, and sought discovery of board records to substantiate his allegations. The board denied the application without substantive comment.[3] On judicial review, the district court found Rosen failed to preserve error on his constitutional claim. It concluded, therefore, that the board had not abused its discretion in denying rehearing.

Rosen correctly asserts on appeal that, in order to preserve agency error for judicial review, a constitutional issue may be raised for the first time in a petition for rehearing. *Fisher v. Board of Optometry Examiners,* 478 N.W.2d 609, 612 (Iowa 1991). The district court was incorrect in ruling otherwise. Its error, however, does not entitle Rosen to rehearing.

To prevail on an equal protection claim, Rosen would be required to prove (1) that he is similarly situated with persons who have been treated differently by the board, and (2) that the board has no rational basis for the dissimilar treatment. *More v. Farrier,* 984 F.2d 269, 271 (8th Cir.1993). Rosen has not made even a minimal showing in support of either test. He merely asserts on appeal that the facts he alleges "are highly plausible as a matter of simple common sense." Given the necessarily individualized review of applicants for medical licensure, and the substantial evidence in the record bearing on Rosen's character, we find no abuse of discretion in the board's denial of rehearing and affirm the court's judgment on this issue.

V. Finally, Rosen claims the court should have granted his motion for leave to present additional evidence responsive to an argument made in the State's trial brief. The court did not rule on the motion, and Rosen did not move to enlarge the ruling pursuant to Iowa Rule of Civil Procedure 179(b). The issue, therefore, has not been preserved for appellate review. *West Branch State Bank v. Gates,* 477 N.W.2d 848,

852 (Iowa 1991); *Kernodle v. Commissioner of Ins.,* 331 N.W.2d 132, 134 (Iowa 1983).

**AFFIRMED.**

All justices concur except TERNUS, J., who dissents.

---

**3.** The ruling did contain the following notation handwritten by the board chairperson: "Dr. Rosen may submit a new, completed application for consideration."