# IN THE COURT OF APPEALS OF IOWA

No. 24-1764
Filed December 3, 2025

**HELENA DAHNWEIH,**
        Petitioner-Appellant,

**vs.**

**IOWA BOARD OF NURSING,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


        A petitioner appeals the district court's order affirming the Iowa Board of

Nursing's decision to revoke her nursing license.  **REVERSED AND REMANDED.**


        Trent Nelson (argued) of Sellers Galenbeck & Nelson, Clive, for appellant.

        Brenna Bird, Attorney General, Breanne A. Stoltze (argued) and Ian M.

Jongewaard (until withdrawal), Assistant Solicitors General, Eric Wessan, Solicitor

General, Patrick Valencia, Deputy Solicitor General, and Tyler L. Eason and

Jennifer Klein, Assistant Attorneys General, for appellee.


        Heard at oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

In 1990, Helena Dahnweih and her family fled the brutal civil war taking place in her home country of Liberia. She had little opportunity for advanced education in her home country but always desired to help others, working as a church chaplain. After arriving as a refugee in the United States, Helena sought to further her ambitions of helping others through a career in nursing. And since that arrival, Helena has been consistently climbing the nursing educational ladder, hoping to someday become a nurse practitioner. Along the way, she enrolled at Med-Life Institute (MLI) in Florida in 2017 for the purpose of completing the final course towards her associate degree in nursing, a required achievement for obtaining licensure as a registered nurse. She completed that course and then passed the national nursing exam required for licensure. But years later it was revealed that MLI, among many other for-profit nursing schools, had engaged in the practice of selling fraudulent diplomas and transcripts to aspiring registered nurses. The Iowa Nursing Board then initiated an investigation into Helena and found that MLI—not Helena—had sent the board an inaccurate transcript at the time Helena was applying for licensure in Iowa.

Instead of seeking to clarify or correct Helena's educational record to determine if she meets the requirements for licensure in Iowa, the board accused Helena of fraud in procuring her license[1] and eventually found "substantial evidence" she did so. On her petition for judicial review, the district court agreed.

---

[1] Iowa Code section 147.55 (2023) provides no avenue by which the board can revoke or suspend a licensee's license to practice based on inadequate credentials unless the licensee is "guilty of . . . [f]raud in procuring a license."

But not only is any evidence of her purported fraud glaringly sparse, a fraud finding in this case requires the fact finder to engage in large leaps of logic resolved only by an assumption that Helena was acting in bad faith, as well as an inexplicable disregard for her reasonable responses to the board's questioning.

We decline to do the same and will not punish Helena for the fraud perpetrated by her nursing school. Our country has been called a place where the "oppressed [and] persecuted of all Nations"[2] can "become one people"[3] with our citizenry. By successfully transitioning to our country from her war-torn home, putting forth years of hard work and delivering medical care in support of her fellow Americans, all while raising her family, Helena has done exactly that. For the reasons stated below, we reverse the order of the district court and the decision of the board and remand for entry of an order consistent with this opinion.

## I. Background Facts and Proceedings

In Liberia, Helena was a chaplain and her husband was a pastor. After emigrating from Liberia in 1990, Helena and her family lived in various locations throughout the United States over the years. She attended nursing courses at many different educational institutions due to those moves. Early on, she studied for and earned her certification as a certified nursing assistant so that she could work in the medical field while studying to become a licensed nurse. Eventually,

---

[2] Letter from George Washington, commander-in-chief of the Cont'l Army, to Joshua Holmes, volunteer Ass'ns of the Kingdom of Ir. (Dec. 2, 1783) (on file with the National Archives: Founders Online), https://founders.archives.gov/documents/Washington/99-01-02-12127.

[3] Letter from George Washington, President of the U.S., to John Adams, Vice President of the U.S. (Nov. 15, 1794) (on file with the National Archives: Founders Online), https://founders.archives.gov/documents/Washington/05-17-02-0112.

in 2008, Helena completed her licensed-practical-nurse (LPN) studies and exam and became a licensed practical nurse in Illinois. Following her licensure as an LPN, Helena attended and earned educational credit toward her associate degree in nursing at eight different institutions, including Kaplan University, now known and officially credited as Purdue University Global (Purdue).[4]

In August 2016, Helena began her coursework at Purdue in Cedar Rapids and attended the institution through the remaining credits in her degree, including the capstone course in the summer 2016 semester. Her transcript reflects that she failed the capstone course and was subsequently "dismissed" from the program. Helena testified that the capstone course culminated in a true-false exam, which required students to explain the reasoning behind each of their true-false answer responses. Helena, unaware that she was also required to provide explanations for her answers, failed the exam by default. She was not permitted to retake the exam and failed the capstone course, leading to her dismissal from Purdue. Because successful completion of a nursing degree is a requirement to take the National Council Licensure Examination (NCLEX), Helena would be unable to become licensed as a registered nurse (RN) without it.

Helena immediately began searching for an institution that would accept her earned credits, permit her to retake the capstone course, and graduate with her degree. The board does not dispute Helena's claim that she only needed this final course to complete her degree. Helena then found MLI, a university located and certified through the State of Florida, whose administration informed her MLI would

---

[4] We refer to this institution as Purdue University Global because that is how the institution refers to itself on Helena's official transcript.

accept all her transfer credit. Helena testified that MLI quoted her a tuition price of $6000 for the semester which would have included courses she had already taken. Helena ultimately paid $3000 in tuition for the semester because she only took the capstone course and none of the other offered courses.

Helena received email correspondence from university administration in September 2016 providing onboarding information for new students, information about on-campus requirements, and notifying her that the semester would begin in October. Notable to the board's fraud findings against Helena, these emails were sent from the administrators' personal email addresses. Helena went on to finish the capstone course without incident, largely prepared for the course by reviewing materials remotely and at least twice flying to Florida to conduct the in-person course class sessions in October and December. Helena presented airline ticket stubs to the board as evidence of her flights to and from Florida.

In March 2018, Helena received a "completion letter" informing her she had successfully completed the program requirements. Due to an illness with her mother, she did not take the NCLEX until March 2019. She passed the NCLEX on her first attempt. She then applied for her RN license in Florida. Helena received her RN license in Florida on March 8. Shortly after that, she applied for her RN license in Iowa.

As part of the licensure process in Iowa, the board requested a transcript from MLI. MLI sent the board an "official transcript" in March 2019. The transcript provided to the board directly from MLI[5] indicated attendance from January to

---

[5] Helena had no part in the production or delivery of her transcript to the board. "[I]t was established that it is the policy of the [b]oard that they will only accept a

December 2017, despite Helena having attended from October to December 2017. Helena testified that she did not review her transcript until the board notified her of the investigation into her credentials. Following submission of her transcripts, the board issued Helena her nursing license. Since receiving her Iowa nursing license, Helena has practiced as a nurse without incident.

In February 2023, the Florida State Board of Education recommended that MLI cease enrollment of new students. The United States Department of Justice (DOJ) had been investigating MLI, along with other Florida nursing schools, in partnership with other federal agencies and the State of Florida in an investigation dubbed "Operation Nightengale." The DOJ alleged that the owners and operators of these schools had conspired to produce and sell fraudulent nursing transcripts and diplomas. MLI's owner was indicted as a result of this investigation and admitted that MLI had awarded both legitimate and illegitimate diplomas. MLI's owner provided the DOJ with a list of students who had received legitimate degrees and a list of students who had been issued fraudulent degrees. Helena's name appeared on neither list.

Knowing that she had attended MLI, the board then decided to investigate Helena's credentials. In May 2023, the board charged Helena with falsification of the application, credentials or records submitted to the board for licensure. The

---

transcript from an accredited university directly." This differentiates Helena's case from *Rosen v. Board of Medical Examiners of Iowa*, which the district court relied upon in its decision to affirm the board. 539 N.W.2d 345 (Iowa 1995). There, the Board of Medical Examiners found an applicant for medical licensure committed fraud when he submitted a signed application that omitted key information about his preceptorship, despite the applicant's argument that he had another individual submit the application for him. *Id.* at 348, 352. Here, Helena was not permitted to create her transcript or submit it to the board.

investigator concluded that although the transcript MLI had produced was inaccurate, she "did not have a negative impression of [Helena]. I did not lack sympathy for her situation." The investigator also noted that Helena had provided MLI with a copy of her Purdue transcript for the purpose of MLI transferring the credit.

Following the investigation, the board held a contested hearing in July. The board subsequently concluded that Helena "engaged in fraud to procure a license to practice in this state," revoked her nursing license, and assessed a fine. The board explained its decision as follows:

> [T]he Board does not find credible [Helena]'s claims that she had no knowledge that negotiating the rate of tuition, little to no classroom instruction, uncertain class schedules, and faculty and staff using personal email addresses for official communication were all, at a minimum, highly unusual for a legitimate educational program. Rather, the evidence in this record shows that [Helena] personally corresponded with individuals known to have engaged in a scheme to sell fraudulent nursing school credentials. The record further demonstrates [Helena] paid $3,000 to obtain a nursing associate degree from MLI with a transcript showing she completed a number of courses at the institution, while she freely admitted to having never completed education there beyond NCLEX preparatory instruction. The record also shows [Helena] originally applied for licensure in the state of Florida, despite having lived in Iowa, taken the NCLEX exam in this state, and had no apparent plans to live or work in Florida.

Helena then filed a petition for judicial review in October and a hearing was held. The district court held that substantial evidence supported the board's ruling that Helena had fraudulently procured her license, dismissed Helena's other claims, and granted the board's motion to strike its ruling deliberations from the record.

Helena now appeals the district court's denial of her petition for judicial review.

## II. Standard of Review

Our scope of review in appeals of agency actions permits us to "reverse, modify, or grant other appropriate relief only if agency action is affected by error of law, is unsupported by substantial evidence in the record, or is characterized by abuse of discretion." *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993) (citing Iowa Code § 17A.19). For the evidence supporting the agency's action to be considered substantial, a reasonable person must be able to "find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Id.* We consider all evidence, including that "opposed to the agency's view." *Id.*

## III. Discussion

### a. Substantial Evidence

Helena first argues that under Iowa Code section 17A.19, "[t]he district court erred when it found that the [board] had substantial evidence that Helena committed fraud."

Under Iowa Code section 147.55(1), the board may discipline a nursing licensee "when the board determines that the licensee is guilty of . . . [f]raud in procuring a license." Under the administrative code, "[f]raud in procuring a license may include, but need not be limited to . . . [f]alsification of the application, credentials, or records submitted to the board for licensure." Iowa Admin. Code r. 655–4.6(1)(a) (now Iowa Admin. Code r. 481–618.4(1)(a)). Iowa Code section 272C.3(2)(a) provides that the board's disciplinary powers include the right to revoke the licensee's license.

Fraud under Iowa Code section 147.55 follows the common-law elements for fraud. *Rosen*, 539 N.W.2d at 350. In Iowa, a common law fraud claim requires the plaintiff to prove

> (1) the defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in justifiable reliance on the truth of the representation, (7) the representation was a proximate cause of the plaintiff's damages, and (8) the amount of damages.

*Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012) (cleaned up).

Here, the parties dispute whether Helena knew the false representation in her transcript was false and whether she intended to deceive the board. "Intent to deceive may be proven in one of two ways: by proof that the speaker (1) has actual knowledge of the falsity of the representation or (2) speaks in reckless disregard of whether those representations are true or false." *Rosen*, 539 N.W.2d at 350. Reckless disregard exceeds mere carelessness and must arise to knowing indifference. *See id.* at 351. "Knowledge is defined in Iowa's uniform instructions to mean the defendant 'had a conscious awareness' of the element requiring knowledge. An honest mistake or understandable mistake is not a dishonest act." *Sahu v. Iowa Bd. of Med. Exam'rs*, 537 N.W.2d 674, 678 (Iowa 1995) (internal citations omitted).

We must begin our analysis by assessing which specific findings are relevant to a determination of whether Helena committed fraud in procuring her license. To accomplish that, we attempt to discern what type of fraud the board is alleging Helena committed—since she had no part in the production of her transcript or its delivery to the board. Those acts were committed entirely by MLI.

Helena's MLI transcript erroneously credited her with completing certain courses at MLI rather than transferring her previously earned credits from other institutions. It is worth noting that, in its ruling, the board made the verifiably false factual finding that "[Helena] submitted to the [b]oard a transcript from [MLI]." As the board even admits in its appellate brief, it was MLI who sent the board Helena's transcript. It is Helena's position that she never saw her transcript until she was notified the board would be investigating her educational background. Thus, the board's credibility findings related to Helena's statements regarding her transcript are based in large part on that erroneous factual finding.

The board does not dispute Helena's claim that she intended to transfer her prior credits to MLI, was told by MLI administration that they would accept those credits, and that the Purdue credits were all legitimately earned. The board does not dispute that Helena only needed to complete the capstone course to complete her degree. Her amount of prior credit (103.0 credits) far exceeds the number of credits required by MLI to confer a degree (78.0 credits). Even accounting for the likelihood that not all her credits would be cleanly transferred, she had at least thirty-five additional credits to pad the difference between MLI's and Purdue's credit requirements. It would then be reasonable for Helena to believe that MLI would only require her successful completion of the capstone course for the institution to confer her degree—especially considering that Helena was searching for nursing programs that would do exactly that.

And Helena in no way benefitted from those transcript errors. She would have no reason to expect MLI's failure to transfer her actual prior credits that MLI had promised her it would transfer. Helena had no incentive to concoct fake credits

when she actually earned a large volume of transfer credits and flew to Florida to attend her one remaining class on multiple occasions.

So what fraud did Helena commit here? She possessed a plethora of prior credit, indeed took and completed MLI's capstone course (although the board argues against that course's academic rigor), and had no role in the production or delivery of her transcript to the board, despite the board's claims otherwise. The board's theory of Helena's fraud is based almost entirely in its assertion that "MLI has since been identified as a fraudulent program." True, MLI has been confirmed to have continued issuing degrees after its official closure. But it was an accredited institution at the time Helena attended. Helena testified to the fact that she researched online and saw that MLI was accredited, or at the very least, was certified by the state of Florida. The Florida Department of Education had not advised MLI to cease onboarding new students until nearly six years after Helena had graduated. A college accreditation or state certification holds little value if a student can nonetheless be held liable for fraud for their mere attendance at the institution. The board argues that Helena should have known MLI was fraudulent even if the DOJ and the State of Florida did not yet have knowledge of that. And even if MLI was not accredited, we would think that the board would have observed that fact at the time Helena was applying for her nursing license—having expressly reported MLI as her degree-granting institution—or at the very least, it would have observed such after receiving her transcript from MLI. But the board raised no concerns and issued Helena's nursing license without complaint.

The board's aforementioned argument that the capstone lacked academic rigor is also unhelpful in furtherance of its claim that Helena is guilty of fraud. It is

undisputed that Helena earned over one hundred legitimate nursing school credits over the course of years and many moves around the country. The only course for which the board questions the academic rigor is the capstone that Helena took at MLI. The capstone mainly consists of NCLEX preparation materials and sample questions. It is a licensing prep course specifically tailored to ensure that a nursing student is prepared for the challenges of the NCLEX exam. After taking MLI's capstone, Helena immediately passed the NCLEX—a decent indicator that the capstone served its purpose. We do not fault Helena for failing to question the legitimacy of the course's academic schedule—she had no reason to.

Thus, we are left with the factual trail of breadcrumbs the board cites to support its core argument that Helena "act[ed] with knowledge of the falsity rather than innocently or accidentally," *State v. Romeo*, 542 N.W.2d 543, 549 (Iowa 1996), or with "reckless disregard of whether [her] representations are true or false," *Rosen*, 539 N.W.2d at 350. The board took particular issue with Helena's communications with school administrators, who typically emailed her from personal accounts containing Gmail and Yahoo domain names. While perhaps unprofessional, this alone could not in itself reveal the school to be fraudulent, especially when Helena flew to the school to attend in-person coursework and completed the course per MLI's requirements. And since Helena's communication with the MLI administration took place over personal email, we can infer that MLI sent Helena's transcript to the board from a personal email address as well. So as it relates to email or accreditation, the board was likely presented with some of the same "red flags" it now wishes to weaponize against Helena but did not itself recognize.

We are especially unpersuaded by the board's concerns with Helena's "discounted" tuition. Helena testified that she was quoted $6000 as MLI's full-semester tuition rate. She then informed MLI that she did not need to take on a full course load—she only needed to complete the capstone course to finish her degree. MLI then offered a $3000 tuition rate. We see no issue with the fact that Helena paid lower tuition as a product of taking fewer classes than included in the originally quoted tuition. Tuition is typically based on the number of credits taken, and Helena's tuition agreement with MLI is consistent with that practice.

Lastly, the board criticizes Helena's decision to apply for licensure in Florida shortly before applying for licensure in Iowa. It does not articulate its position for this critique against Helena, although we find it insightful to the board's overall position against Helena—any decision not immediately apparent is ascribed to her bad faith. We find it difficult to defer to the board's credibility findings, which were not based on its observations of Helena's demeanor but instead on its spin of the evidence. *Cf. Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (discussing the importance of the court's assessment of a witness's demeanor as a reason for the deference given to its credibility findings); *see also Menegbo v. Iowa Dep't of Inspections & Appeals*, No. 07-0170, 2007 WL 4553345, at *3 (Iowa Ct. App. Dec. 28, 2007) (giving less weight to an administrative law judge's credibility assessment because the judge did not see or hear the witnesses testify). The best theory we can amass for the board's argument on this point is based on the board's separate finding that diploma-mill schools "encouraged [students] to apply for licensure in states perceived to exercise a lower threshold of scrutiny." But the board also found that Iowa was one of those low-threshold states, so under this

reasoning, an applicant's application for licensure in Iowa could also be used as evidence against that applicant in a board fraud allegation—even if that applicant lives in Iowa.

In conclusion, there is no doubt that MLI was running a diploma-mill scheme and that it submitted fraudulent transcript data to the board. It is clear that both Helena and the board were victimized by MLI's fraudulent acts. But since MLI no longer exists as an entity and its owner was indicted by the DOJ, Helena is the only party left for the board to target. As outlined above, we are flatly unconvinced by the board's arguments, such as the accreditation controversy, the $3000 tuition, Helena's decision to apply for licensure in Florida, and ultimately, its argument that Helena knowingly committed fraud based on her failure to review a transcript she did not produce or deliver to the board. And alongside the other evidence, such as her physical attendance at the school for the capstone course and immediate passage of the NCLEX, we find that email communication with school staff over personal email falls far short of the standard that she acted with "actual knowledge of the falsity of [her] representation or . . . in reckless disregard of whether those representations are true or false." *Rosen*, 539 N.W.2d at 350.

In our view, no reasonable person would find the evidence adequate to reach the conclusion that Helena was guilty of fraud in procuring her nursing license. We reverse the district court's denial of Helena's petition for judicial review as well as the decision of the board.[6] We remand to the district court for entry of

---

[6] Helena also argues the board's decision should be reversed because its action was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact," "unreasonable, arbitrary, or capricious," and "motivated by an improper purpose." *See* Iowa Code § 17A.19(10)(e), (m), and (n). Because we are

an order reversing the board's order revoking Helena's nursing license and ordering her to pay fees.

### b. Irreparable Injury

Helena argues that the Board's decision was not required by law and causes "irreparable injury" under Iowa Code section 17A.19(10)(k). Section 17A.19(10)(k) permits us to "reverse, modify, or grant other appropriate relief from agency action" if we determine Helena's

> substantial rights . . . have been prejudiced because the agency action is . . . [n]ot required by law and its negative impact on the private rights affected is so grossly disproportionate to the benefits accruing to the public interest from that action that it must necessarily be deemed to lack any foundation in rational agency policy.

Helena highlights the other damage she has suffered as a result of the board's case against her, such as having her Medicare/Medicaid participation terminated and being described by the press as having committed fraud. But Helena does not show that this damage is irreparable. She does not argue that her Medicaid/Medicare participation will remain revoked if she is cleared of the board's charges against her and her license is reinstated. And while the press story written about the case is unfortunate for Helena, that story simply restates the original findings of the board without additional commentary or opinion.

---

reversing the board's decision on Helena's substantial-evidence argument, her arguments under section 17A.19(10)(e), (m), and (n) are moot. Helena further contends the board's confidential deliberations should be made available for her defense under Iowa Code section 21.5(5)(b)(1) due to the attorney general's office's inadvertent disclosure of those deliberations to her attorney. This argument is also moot due to Helena's success on appeal, and we do not address it further.

This is not a close case. Yet we are not convinced that the damage has been "grossly disproportionate to the benefits accruing to the public interest" when the public interest at issue here is so vital—ensuring that the individuals licensed to deliver medical care to the public are properly credentialed and qualified to deliver that care. *See id.* § 17A.19(10)(k). Further, we have reversed the board's decision on Helena's substantial-evidence claim, and she has not specified what further relief she is seeking under Iowa Code section 17A.19(10)(k). We decline to grant further relief under Helena's irreparable-injury claim.

### c. Attorney Fees

Helena requests attorney fees pursuant to Iowa Code section 625.29. Because she has prevailed in her appeal and the board's decision was not supported by substantial evidence, we remand for the district court to determine whether the requirements of section 625.29 have been met and the amount, if any, of attorney fees that should be awarded upon Helena's filing of an updated attorney fee affidavit.

## IV. Conclusion

In sum, we reverse the district court's denial of Helena's petition for judicial review. We remand to the district court for (1) entry of an order reversing the board's order revoking Helena's nursing license and requiring her to pay fees and costs, and (2) determination of whether reasonable attorney fees can be awarded under Iowa Code section 625.29 upon Helena's filing of an updated attorney fee affidavit.

**REVERSED AND REMANDED.**