Joann BURNS, Appellee,

v.

The BOARD OF NURSING of the State of Iowa, Appellant.

No. 91-581.

Supreme Court of Iowa.

Feb. 17, 1993.

Rehearing Denied March 26, 1993.

Bonnie J. Campbell, Atty. Gen., and Maureen McGuire, Asst. Atty. Gen., for appellant.

John Barrett, Barbara Drews, Robert W. Pratt, Max Schott, and Emil Trott, Jr., Des Moines, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

The Iowa board of nursing found Joann Burns, a registered nurse, habitually intoxicated, in violation of Iowa Code section 147.55(4) (1991). As a result the board placed Burns' nursing license on probation for three years and ordered her to comply with various conditions during the probationary period. When Burns sought judicial review of the board's decision, the district court reversed, finding there was not substantial evidence to support the charges. The court remanded the matter to the board with instructions to reinstate Burns' license without restrictions. The matter is before us on the board's appeal from the district court decision. Because we find there was sufficient evidence to support the findings, we reverse and remand.

■ I. The appeal is controlled by our scope of review. A court's review of agency action is severely circumscribed. The administrative process presupposes that judgment calls are to be left to the agency. Nearly all disputes are won or lost there. *Leonard v. Iowa State Bd. of Educ.*, 471 N.W.2d 815, 815–16 (Iowa 1991). Thus the court may reverse, modify, or grant other appropriate relief only if agency action is affected by error of law, is unsupported by substantial evidence in the record, or is characterized by abuse of discretion. Iowa Code § 17A.19(8).

■ This case involves a claim that the agency action was not supported by substantial evidence. Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference. *Mercy Health Ctr. v. State Health Facilities Council*, 360 N.W.2d 808, 811–12 (Iowa 1985). We consider all the evidence together, including the body of evidence opposed to the agency's view. *Woodbury County v. Iowa Civil Rights Comm'n*, 335 N.W.2d 161, 164–65 (Iowa 1983).

■ The latter rule should not be overread. In stating that we look to all the evidence, including that offered in opposition to the agency's finding, we do not compromise the limitation on our scope of review. The rule merely means that support for the agency finding can be gathered from any part of the evidence. Because review is not de novo, the court must not reassess the weight to be accorded various items of evidence. Weight of evidence remains within the agency's exclusive domain. Under the circumstances great care must be taken by the reviewing court to avoid moving from the prescribed limited review into one that is de novo.

II. Petitioner Joann Burns became a registered nurse on December 1, 1960. From September 9, 1968, she was continuously employed by a Mason City hospital. On the basis of indications Burns may have misused alcohol (anecdotal notations dated November 5, 1986, June 20, 1989, and January 18, 1990) the hospital engaged a health professions investigator to investigate the matter and report.

According to the November 5, 1986, notation, Burns' supervisor confronted her about her behavior. The notation stated "we visited about the odor of alcohol that was noted by ancillary personnel. [Burns] stated that it will not happen again. This constitutes an oral warning." The notation was signed by Burns and her supervisor.

It did happen again. Indeed the hospital became convinced that Burns had a serious problem with alcohol. The hospital had reports that two other nurses smelled alcohol on Burns during duty hours. One stat-

ed this happened as often as once every two weeks. Burns was sometimes seen eating lemon at these times. The board concluded this was done to hide the alcohol's distinctive odor.

There were indications that alcohol adversely affected Burns. For one thing, for a variety of reasons, she experienced increasing absenteeism. There was also a more ominous indication. Although she had a reputation as being skilled at starting difficult intravenous catheters, Burns, during the period in question, was compelled to withdraw from chemotherapy training which involved intravenous catheters. It was said this was "due to tremulous hands."

Her supervisor also noted the odor of alcohol and confronted Burns about it. On one such occasion, at 7:00 a.m., Burns explained only that she had one or two drinks the previous night. Expert testimony, however, showed that the odor indicated either much more recent ingestion, two-to-four hours previously, or the ingestion of a great deal more the previous night. On another occasion the nursing director also had spoken to Burns by phone as a part of her investigation, and noted Burns' speech was so slurred she could scarcely be understood.

Burns denied she had an alcoholism problem. Direct evidence of extreme intoxication was limited to two incidents, both off duty. One was at a political gathering; one was at an employee's recognition dinner.

At last hospital authorities, notwithstanding Burns' previous reputation as highly competent, demoted her from her position as charge nurse. Burns was also compelled to submit to an intake assess-

ment by the hospital's alcohol and drug recovery program. When Burns called the program developer for an appointment, her slurred words and inappropriate comments convinced the developer that Burns was intoxicated at the time. Although Burns did not proceed with the program, as a result of an hour-long initial assessment, the director strongly suspected Burns had a problem with alcohol abuse.

The program developer, testifying as an expert, stated that common symptoms of alcohol abuse in nurses include denial, physical changes, and general changes in behavior, including job performance. She also stated that nurses generally have been abusing alcohol for a minimum of three to five years prior to the time they are detected in the work place. The work setting is usually the last place where problems of alcohol abuse appear. When a problem is detected at work, it may be in a variety of forms, including absenteeism, failure to perform some quantity or quality of work as previously performed and the tendency to avoid challenging assignments.

III. Neither the legislature nor we have defined the term "habitual intoxication" as it is used in section 147.55(4). The district court applied a general definition from a law dictionary.[1]

■ We agree with the board's view that a general definition of the term is inadequate for its purposes in superintending the licensing of nurses. Obvious public policy considerations are implicated. The nursing board is called upon to defend the public interests in the crucial and exacting matter of health care. In doing so, it cannot be held to the showing of habitual

---

1.  One who frequently and repeatedly becomes intoxicated by excessive indulgence in intoxicating liquor so as to acquire a fixed habit and an involuntary tendency to become intoxicated as often as the temptation is presented, even though he remains sober for days or even weeks at a time. A person given to inebriety or the excessive use of intoxicating drink, who has lost the power or the will, by frequent indulgence, to control his appetite for it. The custom or habit of getting drunk; the constant indulgence in stimulants, where-

by intoxication is produced; not the ordinary use, but the habitual use of them; the habit should be actual and confirmed, but need not be continuous, or even of daily occurrence. That degree of intemperance from the use of intoxicating drinks which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon the innocent party.
Black's Law Dictionary 640 (5th ed. 1979).

intoxication required for such things as involuntary treatment.

There is precedent for exacting a lesser showing. Prior to the advent of the implied consent law for motor vehicle drivers, in common with most jurisdictions, we adopted a definition of intoxication under which intoxication occurred upon *any* impairment of faculties. *See State v. Stout,* 247 Iowa 453, 457, 74 N.W.2d 208, 210 (1956) (defining intoxication as occurring when person "has lost control in any manner or to any extent of ... reason or faculties ... or the control or motion of ... person or body"). Stark public necessity demanded such a definition. This is because, even under the best of circumstances, highway traffic can be dangerous to negotiate. Drivers even slightly impaired by alcohol are an unacceptable threat to themselves and to others. Public safety is obviously as serious a concern in professional nursing services in a hospital as it is in the operation of motor vehicles on our highways. It was entirely appropriate for the board to recognize the threat posed by an imbibing nurse on duty, and to define intoxication on a basis outside a legal dictionary definition.

The board, acting within the parameters of due process, must be allowed to apply section 147.55(4) on a case-by-case basis in the light of public health and safety concerns. It is clear that agencies have the authority to develop policy on a case-by-case basis. *See Young Plumbing & Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377, 382 (Iowa 1979) ("Absent statutory guidance, the choice of whether to develop policy by rule, contested case, or both, lies 'within the informed discretion of the administrative agency.' "). Two incidents of on-duty intoxication were sufficient to justify a license revocation of a nurse in *Alabama Board of Nursing v. Pearl Lee Lucas Herrick,* 454 So.2d 1041 (Ala.Civ.App.1984).

We think the board applied an appropriate definition to the facts here. The nursing board should not be required to wait until the habitual intoxication becomes so debilitating that there is immediate danger of harm to patients. The section should be liberally applied so as to protect the public by allowing the nursing board to interfere when harm is imminent, and before it occurs.

Under the board's view Burns was habitually intoxicated when her repeated ingestion of alcohol compromised her professional capacity while on duty and thereby threatened the safety of hospital patients subject to her care. Substantial evidence supports the board's finding. The trial court erred in interfering with agency action.

What we have said renders moot a trial court holding allowing attorney fees for Burns' counsel, pursuant to Iowa Code section 625.29. Fee awards, under the statute, can be awarded only to the prevailing party. Because Burns does not prevail under our review, the award must be set aside.

REVERSED AND REMANDED.