# IN THE COURT OF APPEALS OF IOWA

No. 13-1016
Filed April 16, 2014

**PR PUB, LLC d/b/a THE QUARRY,**
    Plaintiff-Appellant,

**vs.**

**IOWA ALCOHOLIC BEVERAGES DIVISION,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.


    PR Pub, LLC, d/b/a The Quarry, appeals from the district court's decision affirming the Iowa Alcoholic Beverages Division's denial of its liquor license renewal application. **AFFIRMED.**



    Dennis D. Jasper, Bettendorf, for appellant.

    Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee.


    Considered by Doyle, P.J., Bower, J., and Goodhue, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**DOYLE, P.J.**

PR Pub, LLC, d/b/a The Quarry, appeals from the district court's decision affirming the Iowa Alcoholic Beverages Division's denial of its liquor license renewal application. We affirm.

## I.     *Background Facts and Proceedings*

Patrick Rupp is the sole owner of PR Pub, LLC. PR Pub, LLC does business as The Quarry, a Davenport bar/tavern. In 2010, Rupp applied for a liquor license for The Quarry. The Iowa Alcoholic Beverages Division (the ABD) issued a liquor license to The Quarry in April 2010.

The ABD subsequently received information from an anonymous source indicating Rupp's liquor license application may have contained misrepresentations. The ABD referred the complaint to the Division of Criminal Investigation. An investigation revealed Rupp's application failed to disclose his criminal history. Specifically, in the application, Rupp was asked whether he had ever been "convicted of a felony offense in Iowa or any other state" or "charged, arrested, indicted, convicted or received a deferred judgment for any violation of any state, county, city, federal, or foreign law." Even though he had been convicted of possession of a controlled substance (cocaine) in 2004, trespass in 2002, and operating while intoxicated in 1993, Rupp answered "No," "No," and "None" to the questions pertaining to this information on his application.

Rupp filed a license renewal application for The Quarry in 2011. Again, Rupp answered "No," "No," and "None" to the questions pertaining to his criminal history, despite the fact Rupp was arrested for operating while intoxicated in April 2010 and received a deferred judgment for that charge in August 2010. One day

after the renewal application was submitted,[1] Rupp attempted to amend his application in regard to his criminal history.[2]

In June 2011, the ABD denied Rupp's renewal application upon its determination Rupp "failed to disclose criminal history in the application which is a misrepresentation of material facts" such that he did not "meet the standards of 'good moral character'" to hold a license in Iowa.

The ABD's decision was affirmed on appeal by an administrative law judge in October 2011 and the ABD administrator in February 2012. The administrator's decision on appeal stated:

> The Licensee asserts that the false answers provided on the criminal history screens of the initial and renewal electronic license applications were unintentional. Licensee testimony suggests that the criminal history questions were answered incorrectly because of careless reading.
> [However, t]he questions contained on the criminal history screens of the electronic license application are clear and easily understood . . . .
> When filing the initial electronic licensing application on March 5, 2010, the Licensee should have disclosed the 2004 possession of controlled substance (cocaine) charge and conviction, the 2002 trespass charge and conviction, the 1994 theft—4th degree charge and dismissal, and the 1993 operating while intoxicated charge and conviction. Based on the review of the records, hearing testimony and other information reviewed by the Administrator, the Licensee did not disclose any criminal history on the licensing applications. The evidence is undisputable that the Licensee filed the renewal electronic licensing application on March 3, 2011, and the Licensee should have divulged the 2010 charge and deferred judgment for operating while intoxicated, especially when considering the deferred judgment was within the previous 7 months.

---

[1] The ABD deems the applications "filed" at the time they are signed and submitted.
[2] According to Rupp, his office manager filed the license applications for The Quarry on his behalf. Rupp asserts after the application renewal was filed, he "immediately remembered that he had some criminal conduct on his record" and he then "immediately contacted ABD to correct his answers."

The fact the Licensee did not disclose any criminal history on the renewal licensing application, and even after the Licensee submitted an amended criminal history for the renewal of the liquor license on March 4, 2011, the multiple charges and their dispositions were omitted. The Licensee is responsible to complete the liquor license application by providing accurate responses to all questions and the Licensee failed to on both the initial and renewal electronic licensing applications.

Furthermore, the Licensee rationalized the incorrect criminal history answers by claiming that there was a failure to confirm the responses provided by those authorized to complete the forms before the applications were filed with the ABD. The applicant signature screen for the initial and renewal electronic licensing applications contained specific language, alerting the applicant that their signature declares all information contained in the application is true and correct and that misrepresentation of material facts in the application is a crime and grounds for denial of the license or permit under Iowa law. On March 5, 2010, and March 3, 2011, Rupp signed and acknowledged those terms. Consequently, the Licensee was put on notice on two separate occasions that failure to comply could result in the denial of the license.

The licensing process is reliant on licensees being forthright in their responses to all questions contained in the licensing application. What is in question in this particular case is whether the Licensee has the requisite "good moral character" for renewal of the license, not whether the omitted charges would have been grounds for denial of the liquor license. The Licensee actions failed to prove they have the requisite "good moral character" for renewal of the liquor license.

The Administrator does not find the justifications argued for not disclosing the Licensee's criminal history persuasive. To excuse irresponsibility and not hold accountable a Licensee who does not ensure that the application is true and correct or allow misrepresented material fact in the license application on multiple occasions is not a reasonable conclusion. Therefore, the Administrator concludes the Licensee does not possess "good moral character" to hold a liquor license in Iowa.

The Quarry filed a petition for judicial review challenging the administrator's decision. In May 2013, the district court affirmed the administrator's final decision, stating in part:

It is reasonable that ABD used the dishonest application on record to come to the conclusion that Rupp intended to deceive ABD. It is reasonable that ABD could have determined with the

evidence on the record that Rupp's honesty during the licensure process would be material to granting a license. It is also reasonable that ABD found scienter through Rupp's lack of regard for whether a representation is true or false.

The Quarry argues this is not the case, as they contacted the ABD attempting to amend the application. The Quarry asserts correctly, that they meet the other necessary qualifications for licensure and these non-disclosures, if all information had been disclosed would not have impacted licensure. However, the failure to be forthcoming in the application impacts licensing. ABD states corrections to the application were done after the denial. ABD also asserts that Rupp was not completely forthcoming in amending the record by not including the second OWI offense. This is a wholly discretionary area for ABD. Agencies are granted the necessary discretion to make licensing decisions. *Burns v. Board of Nursing*, 495 N.W.2d 698, 700 (Iowa 1993).

ABD could reasonably find that Rupp did not possess the good moral character required for a Class C Liquor License, based on Rupp's actions during the licensure process. There is substantial evidence on the record that would allow a reasonable person to find that this may have been the case.

The Quarry appeals.[3]

## II.  *Standard of Review*

It must first be noted that our review of final agency action is "severely circumscribed." *See Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 839 (Iowa 2002); *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995). Nearly all disputes are won or lost at the agency level; the cardinal rule of administrative law is that judgment calls are within the province of the administrative tribunal, not the courts. *See id.*

We review final agency action for corrections of errors at law. *Sunrise Ret. Cmty. v. Iowa Dep't of Human Servs.*, 833 N.W.2d 216, 219 (Iowa 2013). We apply the standards of chapter 17A (2011) of the Iowa Administrative Procedure Act to agency action to determine if our conclusions are the same as

---

[3] The Quarry sought and was granted an extension of time to file its appeal.

the district court's conclusions. *See id.* We are bound by the agency's findings of facts if they are supported by substantial evidence. *Id.*; *see also* Iowa Code § 17A.19(10). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue . . . ." Iowa Code § 17A.19(10)(f)(1). We will not interfere with an agency's decision when reasonable minds might disagree or there is a conflict in the evidence. *Organic Techs. Corp. v. State ex. rel. Iowa Dep't of Natural Res.*, 609 N.W.2d 809, 815 (Iowa 2000). "We apply agency findings broadly and liberally to uphold, rather than to defeat, an agency's decision." *Id.* "On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc. v. House*, ___ N.W.2d ___, ___, 2014 WL 890152, *4 (Iowa 2014) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011)).

The issue presented in this appeal is a mixed issue of fact and law— whether substantial evidence supports the facts relied on by the ABD to conclude The Quarry misrepresented material facts on its liquor license applications such that it failed to maintain the requisite good moral character to retain its license. "The legislature delegated to the ABD the power to enforce, implement, and administer the laws concerning beer, wine, and alcoholic liquor contained in chapter 123 of the code." *Auen v. Alcoholic Beverages Div.*, *Iowa Dep't of Commerce*, 679 N.W.2d 586, 590 (Iowa 2004). Accordingly, we will not reverse the ABD's interpretation of Iowa Code chapter 123's licensing standards unless it is "irrational, illogical, or wholly unjustifiable," or unless the ABD's decision is

unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *See* Iowa Code § 17A.19(10)(*l*), (m) & (n).

### III.     Discussion

The Quarry claims there was not substantial evidence in the record to justify the ABD's decision not to renew its liquor license. The ABD counters that its decision was supported by substantial evidence and well within the authority granted by the Iowa Alcoholic Beverage Control Act. *See* Iowa Code ch. 123.

The Iowa Alcoholic Beverage Control Act was created for the protection of the "welfare, health, peace, morals, and safety of the people of the state," and accordingly, the provisions shall be liberally construed to ensure its purpose is accomplished. *Id.* § 123.1. The Act provides that a liquor license may be issued to any person of "good moral character." *Id.* § 123.30(1)(a). A "person of good moral character" means "[t]he person has such financial standing and good reputation as will satisfy the administrator that the person will comply with this chapter and all laws, ordinances, and regulations applicable to the person's operations under this chapter . . . ." *Id.* § 123.3(26)(a). The ABD has further promulgated certain regulations to help guide the administrator in its determination of an applicant's reputation:

> A local authority or the administrator may consider an applicant's financial standing and good reputation in addition to the other requirements and conditions for obtaining a liquor control license, wine or beer permit . . . .
> *b.* In evaluating an applicant's "good reputation," the local authority or the administrator may consider such factors as, but not limited to, the following: . . . licensee or permittee convictions for violations of laws relating to operating a motor vehicle while under the influence of drugs or alcohol, the recency of convictions under

laws relating to operating a motor vehicle while under the influence of drugs or alcohol, licensee or permittee misdemeanor convictions, the recency of the misdemeanor convictions.

Iowa Admin. Code r. 185-4.2.

An applicant who fails to disclose information specifically requested by the ABD jeopardizes the legitimacy and safety of the licensing procedures of the Iowa Alcoholic Beverage Control Act. Moreover, in determining an applicant's "good moral character," the division is granted the authority to assess the applicant's "good reputation" by reviewing his misdemeanor convictions, along with any other factors it deems appropriate. *See id.* (stating administrator is not limited to consideration of factors specifically listed).

In this case, we conclude the ABD's factual findings are supported by substantial evidence, and we do not believe the ABD's interpretation of chapter 123's licensing standards under these facts was irrational, illogical, or wholly unjustifiable. The fact the ABD gave weight to Rupp's dishonesty—or at the very least his lack of oversight to ensure the veracity of his applications—in determining his "good moral character" does not make the ABD's decision unreasonable, an abuse of discretion, or arbitrary and capricious. Accordingly, we affirm the decision of the district court affirming the ABD's denial of The Quarry's liquor license renewal application.

**AFFIRMED.**