# IN THE SUPREME COURT OF IOWA

No. 21–1092

Submitted February 21, 2023—Filed April 7, 2023

**DES MOINES CIVIL AND HUMAN RIGHTS COMMISSION,**

Appellee,

vs.

**PATRICK KNUEVEN** and **MARY KNUEVEN,**

Appellants.

---

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

A landlord appeals the district court judgment against him for housing discrimination based on religion or national origin. **REVERSED AND REMANDED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

John F. Fatino (argued) and Nicholas J. Gral of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

Luke DeSmet (argued) and Michelle Mackel-Wiederanders, Assistant City Attorneys, for appellee.

**CHRISTENSEN, Chief Justice.**

The Des Moines Civil and Human Rights Commission alleged the defendants, a husband and wife who own rental properties together, discriminated against prospective tenants in violation of municipal law by steering prospective tenants of a protected religion or national origin away from their rental properties. A jury found only the husband liable and imposed a penalty against him for $50,000. He appealed and raises several issues, ranging from challenges to the district court's evidentiary rulings to the jury instructions on the elements of steering and the sufficiency of the evidence to submit the claim of steering to the jury. Both husband and wife challenge the district court attorney fee award to the Commission.

On our review, we reverse the district court judgment. The district court incorrectly instructed the jury that steering occurs merely by "discouraging" a member of a protected class from pursuing housing and "encouraging" a member not of the protected class. Such an instruction exposed the defendants to liability for conduct not prohibited by the Iowa Civil Rights Act or the relevant Des Moines ordinance. There is insufficient evidence against the defendants under the proper jury instruction. Accordingly, we reverse the district court judgment, vacate the award of attorney fees to the Commission, and remand for dismissal of the steering charge against Patrick and a determination of whether Patrick should be awarded attorney fees as the now prevailing party.

**I. Background Facts and Proceedings.**

Patrick and Mary Knueven are a married couple who own various rental properties in the Des Moines area that Patrick rents to tenants while operating as the landlord. They came to the attention of the Des Moines Civil and Human Rights Commission (Commission) when an individual filed a complaint alleging that Patrick had engaged in housing discrimination in 2015. Upon further review, the Commission chose to investigate the complaint through the use of housing testers to gauge whether Patrick was participating in some type of discriminatory housing practice.

Joshua Barr, the Commission's director, explained:

Housing testers are persons who go in and try to rent a property, et cetera, and they determine how they are treated and typically have two types: It's the control which is typically someone that's of European descent or white, as others may say, and then we have someone of another [protected] characteristic . . . [such as] someone of a different skin color.

The Commission conducted this testing over the course of a few months in 2015 and 2016 and then again later in 2017.

**A. 2015–16 Testing.** On December 22, 2015, Chris Fultz, a white male acting as a control tester, called Patrick to schedule an in-person tour of the Knuevens' Porter Avenue rental property. Fultz met with Patrick at the rental property the next day, which Fultz described as a "relatively uneventful" visit that involved Patrick walking him through the property. There is no recording of the phone call or visit in the record.

On December 28, Deeq Abdi, a protected tester, called Patrick to inquire about the same property in a recorded call. Abdi has an accent that indicates he

is not a native English speaker. During the call, Abdi told Patrick his name and noted that he was calling to see if the rental property was available. Patrick responded, "It's rented. It's taken and they're living there." When Abdi asked who he was speaking to, Patrick said his name was "Joe." Abdi asked if any other units would be coming available, and Patrick answered, "Nope." Abdi thanked Patrick, and Patrick ended the call without a response. Overall, Abdi described Patrick as evasive, explaining that Patrick avoided his questions and gave him the impression "that he doesn't want to rent the apartment to me because [for] no reason [he] was trying to cut me off and you can see that."

Fultz called Patrick again on January 4, 2016, about the rental property at issue. After Patrick informed him that he rented the property to someone else, Fultz asked if Patrick had anything else available to rent. Patrick told him that he had a different property that would be available in a week. There is no recording of this call in the record.

The Commission conducted similar testing during that time period involving two females: one a white control tester and the other a Muslim protected tester. The control tester, Jodi Mashek, spoke with Patrick over the phone on January 27 about a different rental property and arranged an in-person visit. That visit occurred on January 29. She reported that Patrick gave her a tour of the property, answering any questions she had and pointing out new appliances and flooring. He also mentioned that "it was a really nice neighborhood, [and] that neighbors on both sides had been there for a very long time." There is no recording of this call or visit in the record.

The protected tester, Nadia Ingram, first interacted with Patrick over the phone on January 28 in a recorded call that does not reveal any of her protected characteristics. Patrick asked her a few questions about when she was looking to move in and arranged for Ingram to view the property with him the next day. Ingram arrived for the visit wearing a hijab, which she describes as a "head scarf" that "easily identifie[s]" her as Muslim, with her two young children in tow. She discreetly captured an audio recording of her visit.

Ingram testified that Patrick "didn't really say hi when I initially said hi." He immediately asked her if her husband was with them and "seemed a little disappointed" that she did not bring her husband. Ingram described Patrick as "tense," explaining,

> [E]very time I walked into a room, [Patrick] walked out. It seems like he didn't want to be around me. I also noticed a lot of times when he would be leaving a room, he would be muttering expletives under his breath not loud enough that he wanted me to hear it but I could certainly hear what he was saying.

When she asked Patrick what the neighborhood was like, he claimed he didn't know about the neighborhood or what the neighbors were like.

Ingram summarized the differences in her experience with Patrick over the phone when he was unaware of her protected status compared to her subsequent in-person visit when she was identifiable as Muslim. She testified,

> On the phone, like I said before, he was polite, he was asking lots of questions about our situation, when we were looking to move. He even said thank you at the end of the conversation when I hung up with him and thanked him. He generally seemed to be interested in us as potential tenants.
>
> In person it was a very different situation. He wasn't overtly rude in that he didn't call me names. He wasn't saying anything that

was unkind directly to me with the exception of obviously the expletive that he kept muttering under his breath but he certainly wasn't the same person as he was on the phone.

He gave me very short answers. At times he said he didn't know. He wasn't offering any different options. He seemed to be more forthcoming over the phone. In person he just didn't seem like he wanted to be around me at all.

On the phone I used my real name which is a very multi-cultural name. It doesn't expressly show what my ethnic or religious background is. In person as I said before about what I was wearing, very obviously Muslim or at least not a typical Caucasian Christian or whatever. I'm pretty easily identified as Muslim.

None of the testers mentioned applied to rent a property from Patrick.

**B. 2017 Testing.** The 2017 testing began when Carla Cox, the test coordinator at the Fair Housing Center of Nebraska and Iowa who was working with the Commission, called Patrick on August 4 to inquire about an advertisement on Craigslist for the Knuevens' East Kenyon Avenue rental property that was posted on July 31. That posting listed the monthly rent as $650, but Patrick posted a new Craigslist advertisement on August 3 that raised the monthly rent to $800 after consulting with a residential property management company.

When Cox called Patrick, she asked if the East Kenyon Avenue property was still available to rent for $650 per month. Patrick confirmed the property was still available at that rate based on his assumption that Cox must have had the old printout of the advertisement before he had updated it to raise the monthly rent. Cox's voice does not demonstrate any obvious protected characteristics regarding religion or national origin, but there is no recording of this call in the record.

On August 7, tester Laurie Madison called Patrick about the same rental property in a recorded call that lasted less than two minutes. She started the call by identifying herself as a caseworker at the Omaha Refugee Resettlement Program, to which Patrick responded, "Alright, what do ya got?" Madison informed Patrick that she was seeking housing for a married Muslim couple from Pakistan and asked whether the property was still available to rent. Patrick answered, "Well, yes, it is."

Madison mentioned the Craigslist posting that stated the monthly rent was $650 per month, and Patrick interjected, "Oh, that's an old ad, it's $800." Madison asked follow-up questions about the availability of a garage and whether Patrick showed the property during certain hours. Patrick simply answered "No" to each question without offering any additional information. When Madison stated that she would follow up with him once she knew the couple's availability to view the property, Patrick did not respond and ended the call. A control tester called the same day as Madison to inquire about the property, but Mary answered the phone instead of Patrick and spoke with the control tester about the property's availability.

On August 10, Cox called Patrick again in a recorded call that lasted around five and a half minutes. Cox reminded Patrick of her previous call on August 4 and asked if the property was still available to rent. Patrick informed her that it was, but he also told her that he had shown it to others who had filled out applications and might have another possible applicant in the works. Cox again asked Patrick if the monthly rent for the property was $650, and Patrick

confirmed that was correct. She told Patrick she would be in touch to schedule a viewing and said goodbye, leading Patrick to respond, "Bye." Neither Cox nor anyone from the Omaha Refugee Resettlement Program applied to rent a property from Patrick.

**C. Legal Proceedings.** Following testing, the Commission initiated a formal investigation under the Federal Fair Housing Act and the City of Des Moines's Municipal Code governing discriminatory housing practices. The Commission completed this investigation on May 21, 2019, and filed its notice of probable cause determination that the complaints against the Knuevens for charging higher rent and steering based on applicants' national origin and/or religion were founded shortly thereafter. The steering charge in the Commission's petition specifically alleged that Patrick exhibited a "policy and practice of illegal steering through effective discouragement of rental [property] because of religion and national origin."

On June 28, the Commission filed a petition and request for injunctive relief in district court against the Knuevens for those same charges, noting the Knuevens elected to have the charges decided in a civil action under Iowa Code sections 216.16A(1)(*a*) and 216.17A and sections 62-106 and 62-107 of the Des Moines Municipal Code. Although the petition's allegations of rent discrimination and steering are the result of the interactions between the Knuevens and the testers in August 2017, the petition cited the interactions between Patrick and the testers in 2015 and 2016 as "further evidence[]" that

Patrick engaged in "illegal steering through effective discouragement of rental [property] because of religion and national origin."

The matter proceeded to pretrial conference on May 7, 2021, which involved the Knuevens' motion in limine. Relevant to this appeal, the Knuevens sought to exclude any evidence of the steering allegations from the 2015 and 2016 testing, arguing they were stale because the Commission did not file complaints concerning these allegations within 300 days of their occurrence as required under city ordinance. *See* Des Moines, Iowa, Code of Ordinances § 62-2(b) ("Any complaint must be filed within 300 days after the complainant knew or should have known of the most recent act constituting the alleged illegal discriminatory practice."). The district court ruled that this evidence was admissible to show motive under Iowa Rule of Evidence 5.404(*b*)(2). The jury trial commenced on May 17.

With the exception of the female control tester who talked to Mary in 2017, all of the testers mentioned above testified about their interactions with Patrick. The jury also heard testimony from Joshua Barr, the director of the Commission; Emily Cohen, a human rights specialist for the Commission; and the Knuevens. The jury returned a verdict on May 20 finding no liability for Mary on either claim and no liability for Patrick on the rental price discrimination claim. However, it found Patrick was liable for steering and imposed a civil penalty of $50,000 against Patrick.

Patrick filed a timely motion for new trial and motion for judgment notwithstanding the verdict, both of which the district court denied. Additionally,

the Commission filed a motion for injunctive relief and attorney fees, and Mary filed a motion for attorney fees. After a July 13 hearing, the district court denied the Commission's motion for injunctive relief and partially granted both the Commission's and Mary's request for attorney fees. Mary and Patrick filed timely appeals, which we consolidated and retained. Mary is a party on appeal only to the extent that the outcome could impact the attorney fee awards.

**II. Standard of Review.**

We review the district court's jury instructions for prejudicial error, considering the instructions as a whole. *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019). There is no reversible error if the instructions have not misled the jury. *Id.* We review a district court's refusal to give a requested jury instruction for correction of errors at law. *Id.* Likewise, our review of the district court's denial of a motion for judgment notwithstanding the verdict is also for correction of errors at law. *Carter v. Carter*, 957 N.W.2d 623, 631 (Iowa 2021). We review the district court's attorney fee award for an abuse of discretion. *Guge v. Kassel Enters., Inc.*, 962 N.W.2d 764, 770 (Iowa 2021).

**III. Analysis.**

Patrick raises numerous issues, arguing the district court erred by: (1) failing to instruct the jury properly on the requisite elements of steering, (2) denying his motion for a judgment notwithstanding the verdict because the Commission failed to prove steering, (3) allowing the Commission to "offer unduly prejudicial prior bad acts evidence that did not concern the charges in question," (4) denying his request to present evidence of his good character, and

(5) admitting impeachment evidence concerning Patrick's collateral testimony from a deposition in an unrelated matter. Should we overturn the district court's ruling in Patrick's favor, Mary joins him in this appeal asking us to overturn the Commission's attorney fee award. We address these issues in turn as necessary.

**A. Jury Instructions on Steering.** Patrick contends the district court erred in failing to instruct the jury properly on the elements required to establish a legal claim of steering. The district court's jury instructions required the Commission to prove:

> 1. In August 2017, a tester (hereinafter referred to as the protected tester) is a member of a protected class based upon religion or national origin.
>
> 2. The protected tester sought to rent housing from the defendant Patrick Knueven.
>
> 3. The defendant Patrick Knueven engaged in steering by discouraging the protected tester from pursuing the housing and encouraging someone not of the protected class to pursue such housing.
>
> 4. The tester's religion or national origin was a motivating factor in defendant Patrick Knueven's steering.

Patrick believes these instructions were too expansive, arguing he must have performed some affirmative act that denied or obstructed the protected class member from receiving housing beyond simply discouraging protected testers and encouraging the control testers to pursue his rental housing. He requested the jury be instructed as follows:

> In order to find "steering" in violation of the law, you must find that the Defendants took some steps to show or guide the tester to an alternative property according to their [protected class], or presented information that the property was undesirable for the prospect because of the tester's [protected class].

We agree with Patrick that the district court should have given this requested instruction because it aligns with the law. *See Eisenhauer ex rel. T.D.*, 935 N.W.2d at 10 ("Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions.").

We begin with the plain language of the relevant ordinance. Section 62-101 of the Des Moines Municipal Code enumerates illegal discriminatory housing practices based on certain protected classes, including religion and national origin. *See* Des Moines, Iowa, Code of Ordinances § 62-101. Although it lists eleven different illegal housing practices, only one—section 62-101(a)(10)— expressly mentions "steer." *See id.* That section establishes that it is illegal for a person to "[s]teer or channel a prospective buyer into or away from an area because of [their protected class]." *Id.* § 62-101(a)(10).

As the language of the ordinance expresses, steering involves the landlord intentionally channeling someone into or away from a specific area based on protected status. *See Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1528 (7th Cir. 1990). The Supreme Court has explained that steering is the practice of "preserv[ing] and encourag[ing] patterns of racial segregation in available housing by steering members of racial and ethnic groups to buildings occupied primarily by members of such racial and ethnic groups and away from buildings and neighborhoods inhabited primarily by members of other races or groups." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 366 n.1 (1982). This includes the refusal "to show properties because of the race of the customer, or misleading

the customer about the availability of properties because of his race, or cajoling or coercing the customer because of his race to buy this property or that or look in this community rather than that." *Vill. of Bellwood*, 895 F.2d at 1530 (emphases omitted).

The district court's jury instructions were incorrect because they allowed the jury to conclude Patrick engaged in illegal steering by merely "discouraging the protected tester from pursuing the housing and encouraging someone not of the protected class to pursue such housing." Patrick's disposition in his interactions with the testers may have some bearing in determining whether he engaged in steering, but he was correct in asserting that the jury also should have been instructed to find more than that for a steering violation. This could have been accomplished through his proposed jury instruction, which read:

> In order to find "steering" in violation of the law, you must find that the Defendants took some steps to show or guide the tester to an alternative property according to their [protected class], *or* presented information that the property was undesirable for the prospect because of the tester's [protected class].

(Emphasis added.) Therefore, we must reverse the district court's judgment because the jury instructions misled the jury to Patrick's detriment. *See State v. Coleman*, 907 N.W.2d 124, 138 (Iowa 2018) (explaining errors in jury instructions require reversal when prejudice occurs because the jury instructions misled the jury or materially misstated the law).

With that said, the district court did not err in rejecting Patrick's other requested jury instructions on steering. Regarding Patrick's instruction that "[t]one of voice, the detail by which a party responds to a question, facial

gestures, etc. are not steering under the law," we have already established that these may be considerations in deciding whether an individual engaged in steering. *See Fair Hous. Just. Ctr., Inc. v. Broadway Crescent Realty, Inc.*, No. 10 Civ. 34(CM), 2011 WL 856095, at *7 (S.D.N.Y. Mar. 9, 2011) ("[T]he overall tenor of the conversations could lead a reasonable juror to find that Defendant Celaj was intentionally trying to hinder the African American testers from inquiring further about apartment availability, because of their race."). Moreover, the Supreme Court has already indirectly rejected Patrick's argument that to find steering, there must be evidence that protected class members actually sought to rent housing from him only for Patrick to take some affirmative act to deny them housing. *See Havens Realty Corp.*, 455 U.S. at 373–74. By Patrick's logic, he could not be liable for steering if none of the protected testers submitted a rental application. The Supreme Court repudiated a similar argument in *Havens Realty Corp. v. Coleman.* There, the Court held that a tester who had been given untruthful information that apartments were not available when they actually were had standing to sue under a statute making it unlawful "[t]o represent to any person because of [their protected class] that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* at 373 (first alteration in original) (emphasis omitted) (quoting 42 U.S.C. § 3604(d)).

In the process, the Supreme Court made two statements that are dispositive here. First, it described testers as "individuals who, *without an intent to rent or purchase a home or apartment,* pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Id.* (emphasis

added). Second, the Court remarked, "That the tester may have approached the real estate agent fully expecting that he would receive false information, and *without any intention of buying or renting a home,* does not negate the simple fact of injury within the meaning of § 804(d)" of the Fair Housing Act of 1968. *Id.* at 374 (emphasis added).

Since then, other courts have accepted evidence from testers to examine discrimination claims. *See, e.g., Laufer v. Acheson Hotels, LLC,* 50 F.4th 259, 269 (1st Cir. 2022) ("Just as the Black tester plaintiff's lack of intent to rent an apartment in *Havens Realty* 'd[id] not negate the simple fact of injury,' neither does Laufer's lack of intent to book a room at Acheson's Inn negate her standing." (alteration in original) (quoting *Havens Realty*, 455 U.S. at 374)); *Vill. of Bellwood,* 895 F.2d at 1527 ("If the plaintiffs' evidence is believed, the testers were treated in a racially discriminatory fashion, even though they sustained no harm beyond the discrimination itself, just as testers are not fooled by the misrepresentations made to them."); *Fair Hous. Just. Ctr., Inc.,* 2011 WL 856095, at *5 ("Plaintiffs have failed to sustain their burden of presenting a prima facie case of [housing] discrimination against [the defendant], because they have not shown that she provided the African American testers with any different information than she gave the white testers."); *Rixner v. James W. Boyd Revocable Tr.,* No. 18–0811, 2019 WL 5067143, at *4–5 (Iowa Ct. App. Oct. 9, 2019) (ruling the Sioux City Human Rights Commission had standing to sue the defendants for discriminating in the rental of housing in violation of state and municipal law

based on the evidence collected on the commission's behalf by a third-party tester).

In light of these decisions, we cannot accept Patrick's interpretation of steering to require a showing that "a protected class member attempted to rent or purchase the Knuevens' properties." Accordingly, the district court correctly chose not to instruct the jury that such a showing was an element of steering.

We also reject Patrick's assertion that the district court should have instructed the jury that it must enter a verdict in his favor if the jury found "based upon the evidence, Defendants did not suggest some alternative properties according to their [protected class]." Not only is this not required for a steering violation, but it would have confused the jury because it conflicts with another part of Patrick's proposed jury instructions. Two sentences before stating the jury must find in Patrick's favor if he did not suggest some alternative properties, Patrick's proposed instructions would allow the jury to find steering if "Defendants took some steps to show or guide the tester to an alternative property according to their [protected] class, *or presented information that the property was undesirable for the prospect* because of the tester's [protected class]." (Emphasis added.)

Thus, under Patrick's own proposed instructions, the jury could have found Patrick committed steering without suggesting alternative properties based on the tester's protected class. This conclusion also aligns with section 62-101(a)(10), which Patrick cited as his authority for that proposed instruction, which makes it illegal to "[s]teer or channel a prospective buyer into or away from

an area because of [their protected characteristic], by action by a real estate broker or salesperson which is intended to influence the choice of a prospective dwelling buyer on the basis of [their protected characteristic]." Des Moines, Iowa, Code of Ordinances § 62-101(a)(10). Steering a prospective renter away from an area can be done without providing that prospective renter with alternative properties.

Finally, the district court did not err in denying Patrick's request for the instructions to include the protected class of gender in addition to religion and national origin. The jury heard evidence from both male and female testers about their 2015 and 2016 interactions with Patrick, but the parties agreed that only the August 2017 testing could result in liability for Patrick. All of those 2017 testers were women, so the jury could not have found that Patrick was treating those testers differently than men. Even considering the 2015 and 2016 evidence, the protected testers describing their negative interactions with Patrick during that time frame consisted of both a man and a woman. There was no factual basis to submit an instruction that included gender as a protected class at issue, so the district court decided correctly not to include it.

While the district court did not err in rejecting many of the aforementioned proposed instructions on steering, it ultimately failed to convey the applicable law when it declined Patrick's request for the following jury instruction:

> In order to find "steering" in violation of the law, you must find that the Defendants took some steps to show or guide the tester to an alternative property according to their [protected class], or presented information that the property was undesirable for the prospect because of the tester's [protected class].

In doing so, the district court did not provide the jury with "a proper understanding of the law to be applied in reaching a verdict." *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988).

**B. Patrick's Motion for Judgment Notwithstanding the Verdict.** Patrick filed a motion for judgment notwithstanding the verdict based on his claim that the district court failed to instruct the jury properly on the elements of steering, which the district court denied. Under the inadequate instructions that the district court provided the jury, this denial would have been the correct decision because the jury merely had to find that Patrick "discourag[ed] the protected tester from pursuing the housing and encourag[ed] someone not of the protected class to pursue such housing." This is an exceptionally low bar that would have allowed the jury to reach a verdict against Patrick based solely on the differences in Patrick's tone and conversational manner during interactions with the protected testers compared to the control testers. *See Carter*, 957 N.W.2d at 635 ("A motion for directed verdict or judgment notwithstanding the verdict should be denied if there is substantial evidence in support of each element of the plaintiffs' claim.").

Nevertheless, there was insufficient evidence to justify submitting this case to the jury under the proper jury instruction because there was no evidence that Patrick performed some affirmative act to deny or obstruct the protected tester from receiving housing or guide the protected tester to an alternative property based on religion or national origin. Patrick's curtness in his phone call with a protected tester in comparison to his more amiable phone conversation with a

control tester is inadequate to conclude that Patrick discriminated against the protected tester based on her national origin or religion—even considering Patrick's 2015 and 2016 treatment of protected testers. *See id.* (explaining substantial evidence exists if a reasonable mind would find it adequate to reach a conclusion). Therefore, we dismiss the steering charge against Patrick. Further, it is clear from the record that all material facts of this case have been fully developed, so we direct the district court to enter final judgment in his favor as if it had initially sustained Patrick's motion for judgment notwithstanding the verdict. Iowa R. App. P. 6.1206 ("When a judgment is reversed for error in overruling a motion and granting the motion would have terminated the case in favor of appellant, the appellate court may enter or direct the district court to enter final judgment as if such motion had been initially sustained.").

**C. Attorney Fee Award.** Because we are reversing the district court judgment and ordering dismissal of the steering charge against Patrick, we must vacate the Commission's attorney fees award now that it is no longer the prevailing party. Des Moines, Iowa, Code of Ordinances § 62-107(m) ("A court in a civil action brought under this section or the commission in an administrative hearing under sections 62-4 and/or 62-8 of this chapter may award reasonable attorney's fees to the prevailing party and assess court costs against the non-prevailing party."); *see also Burns v. Bd. of Nursing*, 495 N.W.2d 698, 701 (Iowa 1993) ("Fee awards, under the statute, can be awarded only to the prevailing party. Because Burns does not prevail under our review, the award must be set aside."). As the new prevailing party, Patrick may receive attorney fees, so we

remand to the district court for a determination of any fees. Based on this holding, we need not address Patrick's remaining issues.

**IV. Conclusion.**

For the aforementioned reasons, we reverse the district court judgment against Patrick, vacate the award of attorney fees to the Commission, and remand for dismissal of the steering charge against Patrick and a determination of whether Patrick should be awarded attorney fees as the now prevailing party.

**REVERSED AND REMANDED.**